CONRAD J. RINGLIEB, HELEN ELAINE RINGLIEB AND FRIEDA RINGLIEB, PLAINTIFFS-RESPONDENTS, v. THE TOWNSHIP OF PARSIPPANY-TROY HILLS, DEFENDANT-APPELLANT, GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND THE BOARD OF PUBLIC UTILITY COMMISSIONERS, DEFENDANTS.

Argued October 12, 1971—Decided October 26, 1971.

*Mr. Robert C. Garofalo* argued the cause for appellant (*Messrs. Ryan, Foster & Garofalo,* attorneys).

*Mr. Harold A. Price* and *Mr. Garret A. Hobart, IV,* argued the cause for respondents, Ringlieb (*Messrs. Schenck, Price, Smith & King,* attorneys).

*Mr. Richard M. Pisacane,* Deputy Attorney General, argued the cause for respondents, George F. Kugler, Jr., *et al* (*Mr. George F. Kugler, Jr.,* Attorney General, attorney).

PER CURIAM. The judgment is affirmed for the reasons expressed by Judge Joseph H. Stamler in his oral opinion which reads as follows:

This matter is before the Court on cross motions for summary judgment. On May 6, 1970 the Legislature approved two pieces of legislation concerning solid waste. Chapter 39 of the Laws of 1970 concerned itself with solid waste management and the title of that statute read that it was "An Act Concerning Solid Waste Management creating an Advisory Council on Solid Waste Management in the State Department of Environmental Protection and Relating to the Department's Functions, Powers and Duties".

This statute, Chapter 39, was incorporated into our laws as *N. J. S.* 13:1E–1 *et seq.* and in Section 2 the Legislature expressed its concern when it made the following findings and declarations: "The collection, disposal and utilization of solid waste is a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest; that the health, safety and welfare of the people of this State require efficient and reasonable solid waste collection and disposal service or efficient utilization of such waste, and that the current solid waste crisis should be resolved not only by the enforcement of more stringent and realistic regulations upon the solid waste industry but also through the development and formulation of statewide, regional, county and intercounty plans for solid waste management and guidelines to implement the plans."

Throughout that statute there is no mention of the concern of the Legislature below the inter-county level but by that statute, 13:1E–9, the Legislature provided that the codes, rules and regulations shall be observed throughout the State and shall be enforced by the Department and every local Board of Health. Thereafter the procedure for penalty provisions is set forth in actions commenced by the Commissioner of Environmental Control or by a local Board of Health. The rules and regulations have already been promulgated and adopted and these appear as Chapter 8, "Refuse Disposal."

These were the rules and regulations adopted by the Department and/or Commissioner of Health and although it had been adopted on a day prior to the passage of the legislation here in question by the department of Health of the State of New Jersey, its functions were transferred and the Environmental Protection Department accepted these in accordance with the authority set forth in the statute here in question and *N. J. S. A.* 26:1A–7.

On the same day the Legislature passed the Solid Waste Utility Control Act of 1970, and there are legislative findings made there in *N. J. S.* 48:13A–2 which restate the grave concern of all citizens and of the Legislature in the industry affected and makes a public utility out of those people who are engaged in solid waste collection and disposal and it gives to the Public Utility Commission the duty of establishing and enforcing standards and rates for the regulating of the economic aspects of the solid waste collection, disposal and utilization service. Under the two statutes anyone seeking to engage in this operation would be required to comply with stringent requirements and would first, before qualified as a public utility, be required to be found by the Board of Public Utilities Commissioners as qualified by experience, training or education to engage in the business, to furnish proof of financial responsibility and, most importantly, hold a certificate of public convenience and necessity issued by the Board of Public Utility Commissioners.

This is found in *N. J. S.* 48:13A–6, which concludes with the following sentence: "No certificate shall be issued for solid waste collection or solid waste disposal until the proposed collection or disposal system has been registered with and approved by the State Department of Environmental Protection as provided by law."

In Section 8 of the same statute the Public Utility Commission (the Board) can order any person in this State engaged in the solid waste collection business or the solid waste disposal business to extend his collection or disposal service into any area of the State where service has been discontinued in accordance with sections of the Public Utility Act heretofore enacted, *R. S.* 48:2–27.

A reading of both acts together with the regulation adopted seems to be a comprehensive plan on the part of the State to control all facets of this industry.

All counsel have acknowledged on this motion that the need was great for the State to step in and do something, that the concern was partially economic and rising costs, but there was also concern in the

Department of Environmental Protection about where our land was going when it would be overwhelmed with sewage and disposal problems.

So that this act was in existence when on October 13th, 1970 Parsippany-Troy Hills passed an ordinance. The ordinance was entitled "An Ordinance Providing for Establishing, Licensing, Operating, Regulating, Maintaining, and Controlling Sanitary Landfills in the Township of Parsippany-Troy Hills." There is no question but that the industry there sought to be regulated, the type of industry, was well within the limitations and requirements as imposed by Chapter 39 and Chapter 40.

After the passage of the ordinance heretofore referred to plaintiffs, Conrad J. Ringlieb, Helen Elaine Ringlieb and Frieda Ringlieb —and as the complaint was amended by order of this Court, Sharkey Farms, Inc.—brought an action against the Township of Parsippany-Troy Hills, George F. Kugler, Jr., Attorney General of the State of New Jersey, the Department of Environmental Protection and the Board of Public Utility Commissioners.

In relevant part, so far as this motion is concerned, plaintiffs, who were owners and operators of the sanitary land site in Parsippany-Troy Hills, asked this Court to determine that the Legislature by Chapter 39 and Chapter 40 preempted the entire industry and the regulation of that industry of sanitary landfills by the enactment of the two statutes heretofore referred to. The Attorney General, the Board of Public Utility Commissioners, and the Department of Environmental Control, notwithstanding that they were named defendants — and it was necessary that they be so named because a state statute was asked to be construed by this Court in accordance with the declaratory judgment act, were necessary parties to the suit; at least the Attorney General was — these three defendants join in plaintiffs' motion and support in all respects and adopt the position that there has been a preemption by the State to the exclusion of the municipality.

The defendant municipality cross moves for summary judgment and takes the position that the statutes do not preclude the municipality from passing an ordinance regulating the same industry.

The Court has examined the ordinance and feels that absent state statutes such ordinance would serve a very useful purpose in protecting the health of individuals in the municipality but the state statute, admittedly by defendant, in one or another respect, conflicts with or duplicates that which is required by the ordinance.

I have compared the ordinance with the statutes in question and with the regulations under the statute in question, Chapter 8, "Refuse Disposal" and there is much duplication and overlapping, requiring double effort and serving no useful purpose.

It is well-established that municipalities in our State have no power other than those delegated to them by the Legislature and by our State Constitution. The State may withhold from or grant a given power to a municipality. The question of preemption must

be determined absent an express exclusion from the field by the State by the Courts ascertaining the legislative intent.

In our Constitution, Article 4, Section 7, Paragraph 11, our Courts are enjoined by this constitutional provision, to liberally construe all laws in favor of municipal corporations. Local government should be given every advantage to manage and operate its affairs but the Constitution expressly states that the municipalities have not only the powers granted in express terms but also those of necessary or fair implication or incident to powers expressly conferred or essential thereto, but it concludes with the following limitation : that none of these powers, whether they are express or by implication inconsistent with or prohibited by the Constitution or state statute, shall be inferred as going from the State. Attached to every ordinance there is an implied condition that it must yield to the predominant power of the State.

The Supreme Court in *Wagner v.* [*Mayor and Municipal Council of City of*] *Newark,* 24 *N. J.* 467, Chief Justice Vanderbilt speaking for the Court, stated the principle that I have just set forth in language a little different from that which I have stated but the effect is the same, and then said, "To hold otherwise would lead to confusion and absurd results."

There they were dealing with the control of rents by a municipality and the Court went on to say, "And so it is that if the control of rents by a municipality independent of a state enactment covering the same subject is incompatible with the public policy of the State or with the intent and purpose of the Legislature manifested by its enactment, the attempt at control on a local level is void."

Here the fair reading of Chapter 39 and of Chapter 40, and especially with a view of close scrutiny on the legislative findings, there is an intention disclosed certainly by the Legislature to make uniform this industry throughout the State.

In the *Weehawken* case [*Board of Health of Tp. of Weehawken in Hudson County v. New York Cent. R. Co.*], which I don't have here before me now, 4 *N. J.* [293], at 298, the Supreme Court said, "There cannot be in the nature of things a delegation of regulative power which in its varying local applications would render function under the State's charter impracticable."

This then would be the situation here if each municipality in the state could place and restrict in a manner similar to that which is restricted by the ordinance passed by the Parsippany-Troy Hills, and the conflicting ordinances and requirements of the separate municipalities would bring to a complete halt the sanitary landfill operations in this state, the refuse disposal business, all to the detriment of the general health of the general public.

I have searched to find whether or not there is some statute which specifically regulated or delegated the power to a municipality to regulate sanitary landfills. I could find none. The statutes to which the defendant municipality has referred me in its brief deals with the municipality's right to engage in the collection and disposal of garbage,

the establishment of authorities to operate incinerators and solid waste management authorities.

There is no statutory power granted to a municipality directly which permits it to control the solid waste as the State seeks to control it here. There is no question, it is acknowledged on the part of counsel, that the industry here involved with these two statutes is cloaked with a public interest.

In *In Re Public Service Electric & Gas Co.* the Supreme Court at page 371 of 35 *N. J.* [358] said that an ordinance which conflicted, though it was passed under the zoning power and the general police power granted to a municipality, with the operations of the public utility there involved, the Public Service Electric & Gas Co., and the municipality requirement that it bury all new power lines underground, the Court held that the State through the Legislature "has delegated in most sweeping terms 'general supervision and regulation of and jurisdiction and control over all public utilities' and 'their property, property rights, equipment, facilities and franchises' to the Board."

In the same case, a little later on in the opinion, the Court held that the Public Utilities Law was a recognition by the Legislature that public interest and proper regulation of public utilities transcends municipal or county lines and that a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service by utilities throughout the state.

The Court went on to say at page 372, "Where the state has thus established an agency of its own with plenary power to regulate utilities, it is universally recognized that municipalities cannot properly interpose their local restrictions unless and only to the extent any power to do so is expressly reserved to them by statute."

In the recent case of *Sumner* [*Summer*] *v. Teaneck* Chief Justice Weintraub said — and this is at 53 *N. J.* 548, at page 554: "A municipality may not contradict a policy the Legislature establishes. * * * Hence, an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field."

In *Woodside Homes, Inc. v. Town of Morristown*, 26 *N. J.* 529, a decision of our Supreme Court in 1958, there was the Town of Morristown who was a defendant in an action and the Court there held that this municipality of the Town of Morristown, operating a water company which it originally acquired from a private source that was under an exclusive franchise service area outside the limits of the Town of Morristown, was subject to the jurisdiction of the Board of Public Utility Commissioners in respect to the extension of water mains, and I noted before that the new statute grants to the Board of Public Utility Commissioners in respect to the extension of water mains, and I noted before that the new statute grants to

the Board of Public Utility Commissioners the right to demand of any franchised public utility the right to extend its services in refuse disposal where it deems it necessary.

I find here that the plaintiff, when approved and certificated by the board under the two statutes, operates under the regulations. I find him to be a public utility according to constitutional state legislation, serving a function which is plainly essential to public health. For this the certificate of necessity so provides and requires; and that he is an instrumentality, the plaintiff is an instrumentality, who operates not only with the express approval but under a charged duty with stringent penalties under the eye of the Department of Environmental Protection and the Public Utilities Board.

This is not to say that the municipality has no right. An examination of the Public Utility Act preserves to the municipality a right to intervene in any action taken by the Public Utility Commission.

*R. S.* 48:2–32.2 reads: "Every municipality may intervene in any hearing or investigation held by the board which involves public utility rates, fares or charges, service or facilities, affecting the municipality or the public within the municipality."

I read this to mean, although I found no cases so interpreting it, that it is not limited to the economic aspects. I think that when the words "service or facilities" are used they are talking about the public convenience and necessity. This Court concludes that the Legislature by Chapter 39 of the Laws of 1970 and Chapter 40 of the Laws of 1970 has preempted the field of solid waste collection and disposal and management under both statutes and that municipalities who are protected in part under the statute generally for every operation requires a certification that it does not violate the land use provisions of the municipality before approval. It is protected to that extent and can take such steps as it deems necessary when the occasion arises to impose upon the Department of Environmental Control or the Public Utilities Commission the additional protection that it feels it needs but it cannot do so by an ordinance which involves penalties or requires a person to go through the same procedures, the same requirements, almost word for word the same, as is required by the State.

An order for summary judgment in favor of plaintiffs and the defendants, Attorney General, Public Utilities Commission, Department of Environmental Protection and Control, will be entered. The motion of defendant Parsippany-Troy Hills for summary judgment in its favor is denied.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.