134 N.J. Super. 421 (1975)
341 A.2d 667
SEGAL CONSTRUCTION COMPANY, PLAINTIFF-APPELLANT,
v.
ZONING BOARD OF ADJUSTMENT, BOROUGH OF WENONAH, NEW JERSEY, DEFENDANT-RESPONDENT, AND MAYOR AND BOROUGH COUNCIL OF BOROUGH OF WENONAH, INTERVENERS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1974.
Remanded May 5, 1975.
Reconsidered July 2, 1975.
Decided July 18, 1975.
*422 Before Judges MICHELS, MORGAN and DEMOS.
Mr. Frank H. Wisniewski argued the cause for appellant (Messrs. Archer, Greiner & Read, attorneys; Mr. Lee M. Hymerling, on the brief).
Mr. Donald A. Smith, Jr. argued the cause for defendant-respondent.
Mr. David J. Strout argued the cause for interveners-respondents (Mr. Ronald J. Uzdavinis, on the brief).
PER CURIAM.
The judgment below is affirmed substantially for the reasons set forth in the trial judge's unpublished decision dated September 13, 1973. Because that opinion was written before the recent opinion in Southern Burlington County N.A.A.C.P. v. Mount Laurel Tp., 67 N.J. 151 some additional comment concerning the effect of that decision upon the trial court's opinion is required.[1]
The portion of the Mount Laurel decision which carefully delineates its intended applicability, reads as follows:
As already intimated, the issue here is not confined to Mount Laurel. The same question arises with respect to any number of other municipalities of sizeable land area outside the central cities and older built-up suburbs of our North and South Jersey metropolitan areas (and surrounding some of the smaller cities outside those areas as well) which, like Mount Laurel, have substantially shed rural characteristics and have undergone great population increase since World War II, or are now in the process of doing so, but still are not completely developed and remain in the path of inevitable future residential, commercial and industrial demand and growth. Most such municipalities, with but relatively insignificant variation in details, present generally comparable physical situations, courses of municipal *423 policies, practices, enactments and results and human, governmental and legal problems arising therefrom. It is in the context of communities now of this type or which become so in the future, rather than with central cities or older built-up suburbs or areas still rural and likely to continue to be for some time yet, that we deal with the question raised.
We conclude that the Borough of Wenonah remains unaffected by Mount Laurel. Wenonah is not a municipality of "sizeable land area"; it occupies scarcely one square mile of space. (Mount Laurel was described as a "sprawling township, 22 square miles, or about 14,000 acres, in area)". Of the 660 acres which comprise this tiny borough, only 109 acres have yet to be developed and the only sizeable tract available for multi-family construction is the 41-acre parcel upon which Segal, as contract purchaser, proposes to erect its 340-unit condominium complex. In the Township of Mount Laurel 65% of the township's land area remains vacant or devoted to agricultural use. Wenonah cannot therefore be regarded as one of the developing communities of "sizeable land area" to which the requirements imposed by Mount Laurel apply.
The record does not support any conclusion that Wenonah has endeavored by its zoning to exclude the more modestly circumstanced. Wenonah is not a wealthy community. The average value of the single-family dwellings located within its borders is approximately $23,000. Most of the houses are valued at between $25,000 to $35,000, which values are competitive with prices for which plaintiff's condominiums are to be offered. Since 101 single-family residences can lawfully be located on the 41-acre tract upon which plaintiff proposes to erect his condominiums, it is clear that generous lot sizes are not contemplated by the challenged ordinance. Moreover, single-family dwellings can ordinarily accommodate larger family units, with more children and teenagers than can a one or two-bedroom apartment or condominium. Indeed, one of the arguments made by plaintiff to the zoning board in support of its proposed project *424 was that it would minimize the numbers of children drawn to the town, thus limiting the costs attendant upon their care and education. But see, Molino v. Glassboro Mayor and Council, 116 N.J. Super. 195 (Law Div. 1971). It thus may well be that the modest type, single-family dwelling is less expensive to those needing more space because of family size than the condominiums proposed by plaintiff or some other apartment house rental complex.
Wenonah currently boasts 731 dwelling units within its one-mile square area. During the ten-year period from 1960 to 1970, Wenonah's population grew but 13%. Permitting plaintiff's proposed condominium complex or some other extensive multi-family construction on this one remaining developable parcel of land could almost double the number of dwelling units in a three-year period of time. Requiring multi-family use of this last sizeable parcel of developable land within this tiny borough would thus subject Wenonah to a judicially created explosive growth phenomenon for which it may be ill equipped to deal.
As presently zoned the Segal tract will accommodate 101 families living in single-family dwelling units built over a period of years. Assuming only three to a family, those dwellings would ultimately house 330 persons. On the same modest assumption, a little over a thousand would be housed in plaintiff's proposed condominium development, a difference of approximately 700 in round figures. Wenonah's contribution to the housing needs of Gloucester County must perforce be a minor one because of its limited size, but requiring Wenonah to make this minor contribution may well prove catastrophic to its way of life. This is what the trial judge meant when he noted that Wenonah could not be regarded as the last hope for Gloucester County. On balance, the minor contribution of Wenonah to the housing needs, if there be any, of Gloucester County, as against the major impact on Wenonah resulting from this contribution, removes *425 any constitutional or statutory compulsion upon this borough to provide this alternative mode of housing.
We note, however, that the trial court affirmed the action of the zoning board of adjustment in denying plaintiff its requested variance without making any findings of fact or conclusions of law directed to that issue. We therefore remand the case to the trial court for the required findings of fact and conclusions of law, the results of which should be forwarded to this court within 30 days from the date of this opinion.
The judgment below is affirmed with respect to the issue concerning the validity of the zoning ordinance, and the matter is remanded for findings of fact and conclusions of law concerning the trial court's affirmance of the zoning board of adjustment denial of plaintiff's requested variance. We retain jurisdiction.

Supplemental Opinion
This case was remanded to the trial court for findings of fact and conclusions of law in support of the trial court's affirmance of the Zoning Board of Adjustment denial of plaintiff's requested variance. Segal Construction Company v. Zoning Board of Adjustment, et al, Docket A-797-73, decided May 5, 1975.
We have reviewed the extensive and carefully considered findings of fact and conclusions of law submitted to us by the trial court in compliance with the instructions on remand and affirm the judgment substantially for the reasons stated therein for which there exists substantial evidential support. State v. Johnson, 42 N.J. 146, 162 (1964).
Affirmed.
NOTES
[1] Briefs concerning the application of Southern Burlington v. Mount Laurel, supra, were solicited and submitted by all interested parties.