## Sunny Farms, Ltd. v. North Codorus Township

*Donald T. Puckett,* of *Eveler, Puckett & Trout,* for plaintiff.

*Jesse L. Crabbs,* for defendant.

SHADLE, *P.J.,* January 6, 1976—This is an action in equity by which plaintiff seeks to enjoin defendant from enforcing its ordinances regulating the operation of a sanitary landfill on the ground that the same are invalid.

## ISSUES

The sole issue is whether defendant's ordinances are invalid because their subject matter has been preempted by State legislation and regulation on the same subject.

## DISCUSSION

On March 7, 1973, defendant adopted an ordinance which added to a prior ordinance adopted on June 7, 1963, a new section 7 which was thereafter amended on May 22, 1974. This section as last amended provides as follows:

"No person shall hereafter dispose of any refuse, waste, garbage, trash, decaying matter and organic waste substance of any kind whether collected in North Codorus Township, York County, Pennsylvania, or elsewhere, except by conveyance to and deposit in a disposal facility operated by the York County Solid Waste and Refuse Authority."

There presently is a disposal facility operated by the York County Solid Waste and Refuse Authority, but it is not located in North Codorus Township.

In 1972, plaintiff acquired 583 acres of land, of

which it proposes to use 45 acres which are within North Codorus Township as a sanitary landfill. For that purpose, on March 4, 1974, the Pennsylvania Department of Environmental Resources granted to plaintiff a permit to establish and operate a sanitary landfill at the location in question. Defendant has threatened to institute criminal proceedings against plaintiff if it attempts to carry out its plans to that end in violation of defendant's ordinances.

The Pennsylvania Solid Waste Management Act of July 31, 1968, P.L. 788, as amended, 35 P.S. §6001, et seq., deals with the subject of solid waste disposal. Section 2 of that act, as amended, 35 P.S. §6002, contains the following:

". . . since improper and inadequate solid waste practices create public health hazards, environmental pollution and economic loss, it is the purpose of this act to:

"(1) Establish and maintain a cooperative state and local program . . . for comprehensive solid waste management;

"(2) Utilize, wherever feasible and desirable, the capabilities of private enterprise in accomplishing the desired objectives of an effective solid waste management program; and

"(3) Require permits for the operation of processing and disposal systems."

Section 7 of the act, as amended, 35 P.S. §6007, makes it unlawful for any municipality or person to use his land for solid waste processing or disposal without obtaining a permit from the State Department of Environmental Resources, and authorizes the department, upon approval of applications, to issue permits for that purpose. Pursuant to the act, the department has promulgated detailed and extensive regulations and standards for .

the establishment and operation of solid waste management systems. See 25 Pa. Code §75.1, et seq.

Section 10 of the act, 35 P.S. §6010, makes municipalities with a population density of 300 or more inhabitants per square mile responsible for promulgating and implementing a solid waste management plan to be approved by the department, and authorizes them to adopt ordinances for that purpose "in conformity with the rules, regulations, standards and procedures adopted by the department. . . ."

Section 12(c) of the act, 35 P.S. §6012(c), provides that "[a]ny municipality with a population density of less than three hundred inhabitants per square mile *may* elect to be governed by the provisions of this act or to establish within such municipality waste disposal districts subject to the provisions of this act. . . ." (emphasis supplied).

North Codorus Township falls within this classification. However, since the title of section 12 relates to the authorization of grants and appropriations by the department to municipalities to prepare plans for management systems, it is apparent that the option thus granted to smaller municipalities is only whether to participate in the planning and financial assistance provided by the department.

From the stated legislative purpose and the applicability of the departmental authority to any person or municipality, we conclude that it was the intention of the act to provide a Statewide comprehensive program for implementation and control of solid waste management systems. This being so, we consider the instant case to be ruled by Greater Greensburg Sewage Authority v.

Hempfield Township, 5 Pa. Commonwealth Ct. 495 , 291 A. 2d 318 (1972). That case involved a dispute as to whether a township zoning ordinance prohibiting disposition of sludge from a sewage disposal plant could be applied to a disposal plant the operation of which had been authorized by the Department of Environmental Resources. Although the township legislation there controlled zoning rather than waste disposal as here, and although the affected party there happened to be a municipality authority rather than a private corporation as here, the decision did not turn on those issues. Instead, the following language has emphatic applicability to the case before us:

". . . [T]he enactment by the General Assembly of . . . the Pennsylvania Solid Waste Management Act, resulted in a limited preemption of the field of regulation of sewage facility operations, including the disposal of the 'sludge' from such operations. It follows that no municipality may enact an ordinance with provisions conflicting with a statute enacted by the legislature as to the requirements for licenses. [citations omitted] . . . '[i]t is of course self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute. . . . [citation omitted].

"Accordingly, . . . [the township ordinance] is invalid insofar as it regulates the Authority's sewage treatment plant and requires the Authority to obtain a license prior to the disposal of the 'sludge' resulting from the operation of the treatment plant. All phases of the operation of the Authority's plant, including the disposition of the residual material resulting therefrom, are governed by the licensing procedures and regulations of the De-

partment of Health established under the . . . Pennsylvania Solid Waste Act."

To the same effect is Ringlieb v. Township of Parsippany-Troy Hills, 59 N.J. 348, 283 A. 2d 97 (1971), where the following appears:

". . . if each municipality in the state could place and restrict in a manner similar to that which is restricted by the ordinance passed by . . . [this municipality] . . . the conflicting ordinances and requirements of the separate municipalities would bring to a complete halt the sanitary landfill operations in this state, the refuse disposal business, all to the detriment of the general health of the general public. . . . The Legislature . . . has preempted the field of solid waste collection and disposal and management under both statutes. . . . [The municipality cannot regulate] . . . by an ordinance which involves penalties or requires a person to go through the same procedures, the same requirements, almost word for word the same, as is required by the State."

See also Security Sewage Equip. Co. v. Beebe, 5 Ohio Misc. 178, 214 N.E. 2d 853 (1965).

Defendant has argued that it should have the authority to legislatively control solid waste management beyond and in addition to the regulation provided by the act. It points to the authority of local zoning ordinances to regulate the location of liquor establishments which are licensed by the State. The analogy is not entirely apt, since presumably the State will not license a location in contravention of a local zoning ordinance. In any event, this is not the present situation. The department by its permit has authorized plaintiff to establish and operate a sanitary landfill in North Codorus Township. However, defendant, by its or-

dinances, has, in effect, prohibited a sanitary landfill within its boundaries. As pointed out in the Ringlieb case, supra, such a confrontation by local municipalities could completely frustrate the desirable and necessary requirement of a Statewide policy of solid waste disposal.

The reluctance of defendant and of most municipalities to have a sanitary landfill within their boundaries is understandable. However, much of this reluctance is due to apprehension as to the improper operation of such establishments. Such apprehension should be allayed by the responsibility of control and enforcement the State has assumed under the act. In any event, the facts of life of modern civilization dictate that solid waste must be disposed of somewhere. This being so, the State having licensed the landfill here involved and undertaken to police it, that policy cannot be frustrated by local legislation to the contrary.

## CONCLUSIONS OF LAW

The State has effected a limited preemption of the field of regulation of solid waste management by granting permits for the establishment and operation of sanitary landfills subject to its regulations and standards. The ordinances of defendant which, in effect, nullify the permit granted in this case are, therefore, invalid and cannot be enforced against plaintiff.

## DECREE NISI

And now, January 6, 1976, it is ordered, adjudged and decreed that the ordinances of defendant prohibiting the disposal of solid waste anywhere except in a disposal facility operated by the

York County Solid Waste and Refuse Authority are invalid, and defendant is hereby enjoined from enforcing or attempting to enforce the same against plaintiff.

Notice of the entry of this decree nisi shall be given as provided by Pa. R.C.P. 1518, and, in the absence of exceptions thereto, the same shall be entered as a final decree in accordance with Pa. R.C.P. 1519.