CLARIDGE HOUSE ONE, INC., et al., Plaintiffs,

v.

BOROUGH OF VERONA, a Municipal Corporation, Defendant.

Civ. No. 79–2765.

United States District Court, D. New Jersey.

Jan. 2, 1980.

---

Schenck, Price, Smith & King, Morristown, N.J., for plaintiffs.

Solomon Rosengarten, Newark, N.J., for defendant.

## OPINION

LACEY, District Judge.

On September 21, 1979, plaintiffs Claridge House One, Inc. and Anthony Ferragame filed a four-count complaint naming the Borough of Verona as defendant. In their complaint plaintiffs alleged that an ordinance concerning the conversion of apartments to condominiums adopted by defendant Borough of Verona was unconsti-

tutionally vague, unlawfully deprived plaintiffs of property without due process, violated the equal protection clause of the fourteenth amendment, and unconstitutionally impaired the right of contract. On each count plaintiffs sought a declaration that the ordinance was void, an injunction against enforcement of the ordinance, and costs of suit. Defendant filed an answer on October 26 denying that the ordinance was unconstitutional. The question before the court is whether an injunction should issue.

The facts are not disputed. On August 13, 1979, defendant enacted Ordinance No. 15–79. Violations of the ordinance are punishable by a fine of not more than $200 per day or imprisonment for not more than 30 days, or both. The preamble of the ordinance recites that the Mayor and Council of the Borough of Verona have determined that an emergency exists within the Borough due to the unavailability of rental housing, and that removing existing rental units from the housing market would intensify the emergency,

> thereby adversely affecting the health, safety and general welfare of the citizens of the Borough of Verona, and [that] the conversion of existing rental units to condominiums would result in a displacement of those tenants unable to purchase said condominiums for want of adequate resources or unwilling to purchase because of their advanced years of [sic] other valid considerations.

Therefore, the Council

> declared a moratorium of [sic] the conversion of any rental unit in the Borough of Verona to a condominium.
>
> This moratorium shall last for a period of one year, commencing with the effective date of this ordinance.
>
> During the existence of this moratorium, no one can request a tenant to vacate a unit as a consequence of a conversion of said unit to a condominium.

According to an uncontradicted affidavit filed by James Keane, its vice-president, Claridge House owns a twelve-story luxury apartment building in Verona. Plaintiff acquired the apartment building on December 20, 1978, for the purpose of converting the apartment into a condominium. ¶ 2. Claridge House filed an Application for Registration as a condominium with the Division of Housing and Urban Renewal of the State of New Jersey pursuant to the Planned Real Estate Development Full Disclosure Act. N.J.S.A. 45:22A–21, et seq. ¶ 3. This registration became effective November 21, 1979. Claridge House intends to serve upon all tenants its Notice of Intention to convert. ¶ 4. Tenants will have, for 90 days, the exclusive right to purchase their unit; if the right is exercised within that period the tenant will receive a 10% discount from the listing price. Id. Plaintiff Anthony Ferragame, it is alleged, is a tenant who would exercise his right to purchase. ¶ 3 of the Complaint.

In his affidavit Keane further states that converting a rental building to a condominium involves up to nine different steps, each of which he describes. ¶ 7. He adds that the Verona ordinance is sufficiently vague so that he cannot tell which of these steps can be taken without subjecting himself to prosecution under the ordinance. ¶ 8a. Additionally, Keane avers that Claridge House will suffer substantial financial hardship—including the loss of a large part of $145,000 already expended in preparing for conversion—if the moratorium is upheld. ¶ 8c.

Based on these facts, plaintiffs have set forth several constitutional claims that cannot be regarded as frivolous. Although defendant says that the meaning of the word conversion is self-explanatory, the court notes that defendant has not offered to define the word except to quote from the dictionary. Thus, defendant has not responded to any of the concerns voiced by James Keane, other than to assert that his concerns are baseless. Therefore, the vagueness argument cannot be dismissed out-of-hand.

Nor can plaintiffs' taking without just compensation claim be disregarded as completely without merit. The value of plaintiffs' property has, according to the allegations made, been substantially reduced by

defendant's actions. This has been done pursuant to the defendant's police powers, but it is far from clear that those powers can be exercised in a way that merely affects the form of ownership. As defendant correctly notes, municipalities have the power to take measures that attempt to cope with a variety of problems. Those powers, however, are not unlimited, and a substantial argument can be mounted that the police powers do not extend to controlling the manner in which the Claridge House units are owned.

Similarly, the equal protection argument cannot be discarded as frivolous. Classifications are drawn by the ordinance in question, and while a municipality has much leeway in creating categories, they may not be totally arbitrary or unreasonable. Plaintiffs forcefully contend that singling out owners of apartment buildings bears so little relationship to the goals the ordinance seeks to advance that the equal protection clause is violated.

In view of the court's disposition of the matter, it is entirely unnecessary to determine whether, in fact, any of plaintiffs' constitutional claims would actually prevail. What is of critical importance is that these claims can scarcely be dismissed as frivolous or totally devoid of merit.

While reviewing plaintiffs' brief, the court encountered numerous references to claims that defendant lacked the power under New Jersey law to enact the ordinance and, if such power did exist, that the field had been preempted by the state legislature, although these claims were not explicitly stated in the original complaint herein. The court's research revealed that there was, indeed, a serious question of the validity of the ordinance as a matter of state law. Accordingly, the court requested counsel to submit briefs on the state preemption issue and on the issue of whether the court had jurisdiction to hear that issue; the court also directed the attention of counsel to the recently decided case of *Township of Little Falls v. Bardin*, Civ. A–3280–74 (App.Div. Sept. 27, 1979). Both sides responded with letters addressing the question of subject matter jurisdiction and the appropriateness of its exercise. Plaintiffs also submitted to this court a copy of a brief they had filed in state court in support of their application for declaratory and injunctive relief.

Oral argument on plaintiffs' motion was heard on November 19, 1979. At that time the court ruled that abstention would be improper. Also, the court referred counsel to two recent decisions of the third circuit court of appeals analyzing the doctrine of pendent jurisdiction. Subsequent to oral argument, plaintiffs amended their complaint by adding two additional counts. Paragraphs 2 and 4 of Count 5 allege that defendant's ordinance has been preempted by state legislative action. Count 6 alleges that the ordinance could not be lawfully adopted by defendant because it lacked the power to do so under New Jersey law. The court has been informed that plaintiffs have withdrawn their state court action, which raised the identical claims. With this procedural background in mind, it is now clear that the plaintiffs' state law claims have been squarely presented to this court.

However, before turning to the substance of those claims, it is first necessary to inquire into the court's jurisdiction to hear them. When a state claim derives from "a common nucleus of operative fact," *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), as does a federal claim of sufficient merit, pendent jurisdiction can be exercised over the state claim. The question, then, is when does a federal claim possess sufficient merit as to confer jurisdiction upon a federal court so that the pendent state claim may be considered.

The third circuit has recently supplied an answer to that question. " 'According to *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974), a constitutional claim will support pendent jurisdiction if that constitutional claim is not "wholly insubstantial," "obviously frivolous," or "no longer open to question." ' " *Louise B. v. Coluatti*, 606 F.2d 392, 400 (3d Cir. 1979), quoting *Shands v. Tull*, 602 F.2d 1156, 1158 (3d Cir. 1979). Jurisdiction ex-

ists unless the unsoundness of the claim completely forecloses the subject. *Hagans v. Lavine, supra*, 415 U.S. at 538, 94 S.Ct. at 1378.

■ As has already been noted, plaintiffs' federal claims possess some merit, so they cannot be said to fall into the category of claims that will not support a pendent state claim.

■ The next question is whether the court should exercise pendent jurisdiction over the state claims, for the acceptance of pendent jurisdiction is discretionary with the trial court. *See Gibbs, supra.* Given that the state claims arise out of facts identical to the claims on which the federal claims rest, it is obvious that economy, efficiency and convenience all favor extending pendent jurisdiction. Indeed, the desirability of this course of action is highlighted by the fact that a state complaint raising equal protection and due process claims under the New Jersey Constitution has been filed in state court; that complaint also alleges that defendant lacks the power to enact the ordinance and that the state had preempted the area the defendant sought to regulate. Rather than litigating the federal claims in state court and simultaneously litigating the preemption and power claims plus closely related state constitutional claims in state court, it is more efficient to handle all claims in one action. Furthermore, deciding the state law claims will make it unnecessary to consider plaintiffs' constitutional claims. That factor also favors taking pendent jurisdiction. *See Hagans v. Lavine, supra*, 415 U.S. at 546, 94 S.Ct. at 1383; *Siler v. Louisville & Nashville Railroad Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909); *Gagliardi v. Flint*, 564 F.2d 112, 116 (3d Cir. 1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). *See generally* 62 Va.L.Rev. 194, 199 & n.25 (1976).

Accordingly, the court finds that it has pendent jurisdiction over the state claims and that it would be an appropriate exercise of discretion to take jurisdiction over those claims.

New Jersey courts have on numerous occasions dealt with the issue of whether a municipal ordinance is invalid because the state legislature has preempted the area that the municipality now seeks to enter. Just recently, the New Jersey Supreme Court once again examined the factors to be considered in determining whether preemption should be found. *Garden State Farms, Inc. v. Bay*, 77 N.J. 439, 450, 390 A.2d 1177, 1182 (1978). The court concluded,

A legislative intent to preempt a field will be found either where the state scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation or where the local regulation conflicts with the state statutes or stands as an obstacle to a state policy expressed in enactments of the Legislature.

(citations omitted).

Given this statement of the New Jersey preemption doctrine, defendant's ordinance cannot withstand plaintiffs' challenge. Indeed, the ordinance is defective on two separate and independent grounds.

N.J.S.A. 2A:18–61 *et seq.* deals with the subject of removal of residential tenants. Removing a tenant for the purpose of converting rental units to a condominium is specifically covered by N.J.S.A. 2A:18–61.1k. A lessee may be removed from his apartment if

the landlord or owner of the building is converting from the rental market to a condominium or a cooperative. Where the tenant is being removed pursuant to this subsection, no warrant for possession shall be issued until this act has been complied with.

The act then sets forth various provisions that must be complied with before removal can occur. Three years' prior notice is required before a dispossess action can be instituted, and the action must await the expiration of the lease. N.J.S.A. 2A:18–61.2 g. The owner must give tenants 60 days' notice of his intention to convert to a condominium; in this notice tenants must be informed of their right to purchase and of other statutory rights. N.J.S.A. 2A:18–

61.8. The language of the notice is specified in N.J.S.A. 2A:18–61.9. A tenant who receives notice of eviction under N.J.S.A. 2A:18–61.2 g is to receive from the owner "moving expense compensation of [sic] waiver of payment of 1 month's rent." N.J.S.A. 2A:18–61.10. Comparable housing may be requested of the landlord by the tenant, and in any proceeding under N.J.S.A. 2A:18–61.1 k the owner must prove that the tenant was offered comparable housing and given a chance to inspect and examine that housing. N.J.S.A. 2A:18–61.11. Under this provision, courts can grant up to five stays of one year each if the court is not satisfied that the tenant has been offered comparable housing and has had a reasonable opportunity to inspect that housing; no more than a one-year stay shall be granted if the owner waives payment of five months' rent. The Department of Community Affairs is required to adopt rules and regulations establishing procedures implementing the rights granted tenants under the act. N.J.S.A. 2A:18–61.12.

■ The foregoing provisions make it clear that the New Jersey Legislature intended its legislation to be the exclusive source of law regulating eviction of tenants from apartments being converted to condominiums. The statute sets out in great detail the procedures that must be followed by a landlord before the removal can take place. The statute also specifies the rights and remedies available to tenants faced with the prospect of losing their apartments through conversion. Notice requirements are spelled out. Tenants are given a chance to buy their apartments from the landlord. The landlord must provide comparable housing and give the tenants a chance to inspect those units. This complex and thorough treatment of the question of what steps are necessary before eviction occurs is evidence of a clear and unmistakable intent to have a state-wide policy on removal of tenants when an apartment is converted. Balancing the rights of tenants to keep their apartments as tenants against the rights of landlords to alter the form of ownership of the residential units, the legislature arrived at a comprehensive scheme which takes the interests of both sides into account. Pervasive regulation by the legislature, if not determinative on the question of preemption, strongly suggests that preemption should be found. See Garden State Farms, Inc. v. Bay, supra, 77 N.J. at 450, 390 A.2d 1177; Overlook Terrace Management Corp. v. Rent Control Board of West New York, 71 N.J. 451, 461, 366 A.2d 321 (1976); Township of Little Falls v. Bardin, supra, at 17. Similarly, the very depth of the legislation supports the belief that the legislature intended the rules on this subject to be uniform throughout the state, without variation among municipalities and with its legislation being exclusive in the field. That, too, weighs in favor of finding preemption. Overlook Terrace Management, supra, 71 N.J. at 461, 366 A.2d 321.

Decisive, however, on the issue of preemption is that defendant's ordinance conflicts with state policy. See Garden State Farms, supra, 77 N.J. at 450, 390 A.2d 1177; Ringlieb v. Township of Parsippany-Troy Hills, 59 N.J. 348, 352–53, 283 A.2d 97 (1971); Summer v. Teaneck, 53 N.J. 548, 554, 251 A.2d 761 (1969); Township of Little Falls, supra, at 17. Under the ordinance, for a one-year period no conversions can take place, and during that period "no one can request a tenant to vacate a unit as a consequence of a conversion of said unit to a condominium." Yet, under state law tenants may be requested to leave an apartment if conversion occurs, provided the tenant chooses not to exercise his right to purchase the unit and the landlord follows the statutory procedures. Thus, assuming all other requirements are met, a landlord has the right under state law to evict a tenant once conversion is completed.

■ It is equally clear that under New Jersey law a municipality may not enact an ordinance which is inconsistent with N.J.S.A. 2A:18–61.1 et seq. In Brunetti v. Borough of New Milford, 68 N.J. 576, 350 A.2d 19 (1975), New Milford limited the grounds on which an action for removal could be maintained. Plaintiffs contended that the borough was preempted by N.J.S.A. 2A:18–61.1, and the Supreme Court agreed. The

712

Court said that after the enactment of that statute, "which sets forth specific enumerated grounds of eviction, there can no longer be any doubt that the Legislature intended to preempt this area of the law. Consequently, we hold that provisions in municipal ordinances which set forth grounds for eviction or dispossession are invalid as having been preempted by state enactments." *Id.* at 603, 350 A.2d at 33. In an accompanying footnote, the Court said that it was not necessary to reach plaintiffs' claim that the provisions in question prevented plaintiffs from converting an apartment into a condominium. The Court added, "To pursue this complaint further plaintiffs must challenge the validity of the pertinent State statutes directly." *Id.* at 603 n.26, 350 A.2d at 33 n.26. Though the significance of the latter comment is perhaps obscure, what emerges from the case is that municipalities lack the power to change the permissible grounds for eviction. *See also Guttenberg Savings and Loan Association v. Rivera*, A–2752–78 (App.Div. Dec. 11, 1979) (without explicitly mentioning preemption, court reversed order evicting tenants because ground for eviction not listed in Anti-Eviction Act; common law rule cannot "defeat the Legislature's obvious purpose or . . . lessen the statute's plainly intended scope.") Defendant's ordinance has the effect of excluding conversion to condominiums as a basis for evicting tenants. However, N.J. S.A. 2A:18–61.1 k explicitly allows tenants to be removed from an apartment because of conversion to a condominium. *See generally Fishman v. Pollack*, 165 N.J.Super. 235, 237–38, 397 A.2d 1144, 1145 (App.Div. 1979), where the court observes, "The legal rights of the tenant who is already living in the apartment house are controlled, when conversion occurs, by the provisions of the statute, N.J.S.A. 2A:18–61.1 *et seq.*"

■ The second basis for voiding the ordinance comes from the recently enacted Condominium Act. N.J.S.A. 46:8B–1, *et seq.* That statute regulates the creation, administration, taxing, and termination of condominiums. Condominium is defined as "the form of ownership of real property" having certain specified characteristics.

46:8B–3(h). The penultimate provision of the Act reads in part, "All laws, ordinances and regulations concerning planning, subdivision and zoning, shall be construed and applied with reference to the nature and use of the condominium without regard to the form of ownership." N.J.S.A. 46:8B–29. This means that municipalities are forbidden to place restrictions on condominiums that do not also apply to all other forms of ownership. If the Claridge House converts its rental units into condominiums "[t]he use of the land will not be affected. Planning controls . . . cannot be employed by a municipality to exclude condominiums or discriminate against the condominium form of ownership, for it is use rather than form of ownership that is the proper concern and focus of zoning and planning regulation." *Maplewood Village Tenants Association v. Maplewood Village*, 116 N.J.Super. 372, 377, 282 A.2d 428, 431 (Ch.1971).

■ In enacting the ordinance in question, the defendant has run afoul of the limitation on its police powers imposed by the Act. The goal of the Condominium Act is to regulate condominiums on a state-wide basis; regulations enacted by municipalities that affect condominiums must be based on the "nature and use" of the condominium and not on the fact that it is a condominium. Defendant's ordinance, though, is aimed solely and directly at the form of ownership. Ordinance No. 15–79 can be viewed only as a law that discriminates on the basis of the form of ownership. This is obviously inconsistent with N.J.S.A. 46:8B–29.

The State legislature has dealt with the subject of condominiums in depth on at least three occasions. One statute regulates the manner in which evictions may take place, while the Condominium Act resolves many questions concerning rights and responsibilities in creating and maintaining condominiums. The third piece of legislation is the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A–1 *et seq.* The Act requires develop-

ers to register developments, including condominiums, with the Division of Housing and Urban Renewal. N.J.S.A. 45:22A–26. The statute regulates the contents of the registration statement. N.J.S.A. 45:22A–27.

Taken together, these three statutes amount to a comprehensive, detailed, and thorough scheme for regulating condominiums. The point that must be emphasized is that the statutes regulate—they do not preclude. Faced with a host of problems arising out of this new form of ownership, the legislature has tried to cure these problems by placing controls on condominiums. At the same time, the legislature has removed some obstacles that otherwise made it harder to create condominiums. Tenants can be evicted to make way for conversions, and condominiums cannot be discriminated against in zoning or planning because of its form of ownership.

The moratorium enacted by the defendant does not regulate, but forbids.[1] Because of the prohibition it places on the conversion of apartments to condominiums, even if for one year, the ordinance deleteriously affected what was intended to be a state-wide program of regulation. Since the moratorium stands in the way of executing the twin legislative goals of permitting while regulating, the ordinance must be voided on the ground that the subject matter it covers has been preempted.[2] *Fair Lawn Education Association v. Fair Lawn Board of Education*, 79 N.J. 574, 586–87, 401 A.2d 681 (1979).

It should be stressed that the holding of the court is very narrow. Its sole effect is to void an ordinance which forbids for one year the converting of apartments into condominiums. This decision does not in any way impair the ability of municipalities to restrict or prohibit condominiums pursuant to traditional exercises of police power. *See, e. g., Segal Construction Co. v. Zoning Board of Adjustment*, 134 N.J.Super. 421, 341 A.2d 667 (App.Div.1975) (per curiam). The court simply holds that the defendant's ordinance is preempted by state law.

---

1. The defendant attempts to save the ordinance by saying it does not bar but merely suspends. This unconvincing argument relies on semantics, finding its source in the word "moratorium." Whatever the ordinance is labeled, its effect is to enter the field of condominium law in a manner preempted by state legislation.

2. Additional support for this conclusion comes from the very recently decided case of *Hampshire House Sponsor Corp. v. Borough of Fort Lee*, No. L–11977–79 P.W. (Dec. 20, 1979). Applying virtually the same analysis, the court there held a Fort Lee ordinance placing a moratorium on conversions to have been preempted.

The question raised by this litigation is whether New Jersey municipalities have authority to regulate conversion of residential rental units into condominiums or cooperatives. Because exclusive jurisdiction to act in this field is vested in the State Legislature, the answer is no.