Anna M. PEPPERS et al., Plaintiffs,

v.

Raymond F. McKENNA, etc., et al., Defendants.

No. C 75–329.

United States District Court,
N. D. Ohio, W. D.

April 15, 1977.

Judgment Order June 23, 1977.

John C. Holme, Jr., Toledo, Ohio, Robert L. Mullinax, Ohio St. Legal Services Assn., Columbus, Ohio, for plaintiffs.

Geoffrey E. Webster, Asst. Atty. Gen., Columbus, Ohio, Richard W. Hanusz, Toledo, Ohio, for defendants.

## OPINION and ORDER

WALINSKI, District Judge:

This cause is before the Court on cross motions for summary judgment filed pursuant to Fed.R.Civ.P. 56.

Plaintiffs are applicants for, and recipients of, benefits. under the Aid to Families with Dependent Children and Food Stamp programs. They allege that the defendants have failed to provide them with timely hearings on their appeals of benefit denials, reductions and terminations. Plaintiffs claim that this failure to accord them a hearing within the time limits mandated by both federal and state law has deprived them of their Fourteenth Amendment Due Process rights and gives rise to a cause of action under 42 U.S.C. § 1983, the Food Stamp Act of 1964, as amended, 7 U.S.C. § 2011 *et seq.*, the Aid to Families with Dependent Children program authorized by Title IV of the Social Security Act of 1935, 42 U.S.C. §§ 601–44, as amended, and under the Supremacy Clause, U.S.Const. art. VI.

They have relied for jurisdiction on 28 U.S.C. §§ 1331, 1337 and 1343. An examination of the pleadings, affidavits, depositions and documentary evidence discloses the following uncontested facts.

I.

Prior to February, 1975, Plaintiff Anna Peppers had been paying $56 for $182 worth of food stamps per month. In February she was informed by her caseworker that her benefits were to be reduced and that the same $182 worth of food stamps would henceforth cost $90. Plaintiff Peppers then requested a conference with the Lucas County Welfare Department and a state hearing, which request the Department received on or about February 28, 1975. At the county conference, which was held on March 27, 1975, the plaintiff received an explanation for the benefit reduction and was told that because her request for a county conference and state hearing was received by the Welfare Department more than ten (10) days after the notice was given, as required by 7 C.F.R. § 271.-1(n)(1) and (n)(4)(1), her benefit reduction would take effect immediately.

A hearing on Plaintiff Peppers' appeal was held on August 14, 1975, and a final decision affirming the benefit reduction was issued on September 5, 1975.

Plaintiff Queen Roddy, a recipient of food stamp benefits, requested a reduction in the price of her food stamps (in effect an increase in benefits). Her request was denied by the Lucas County Welfare Department and on April 2, 1975, she requested a state hearing to review the denial. The hearing request was received by the state on April 7, 1975, but the hearing was not held until August 13, 1975. A decision affirming the denial of her request for increased benefits was issued on September 3, 1975.

Plaintiff Francis Zaborski's application for food stamp benefits for the second half of February and the entire month of March, 1975, was denied by the Lucas County Welfare Department. The denial was affirmed at the county conference held on April 7,

1975, and on April 25, 1975, the Ohio Department of Public Welfare received the plaintiff's request for a state hearing on the denial. That hearing was held on August 26, 1975, but the decision reversing the County was not issued until October 24, 1975.

Plaintiff Regenna Peppers, the only named plaintiff who requested a hearing on an Aid to Families with Dependent Children [hereafter AFDC] issue, had been receiving AFDC benefits since April 1, 1974. On March 27, 1975, she applied to the Lucas County Welfare Department for AFDC benefits retroactive to the time when she was medically determined to be pregnant. (Her child was born on February 9, 1974.) Her request was denied on the same day the request was made, and she immediately requested a state hearing to review the denial. However, as of October 13, 1976, a state hearing had neither been held nor scheduled.

Plaintiff Franklin County Welfare Rights Organization, a non-profit organization, is composed of welfare recipients and poor persons. Several of the Organization's members have waited longer than sixty (60) days in food stamp cases and ninety (90) days in AFDC cases for final administrative action on their appeals of benefit denials, reductions or terminations. Affidavit of Shirley Smith, Feb. 23, 1976. On March 10, 1976, this Court accordingly held that the Organization had standing to litigate the rights of its injured members.

In their complaint, the individual plaintiffs and the Franklin County Welfare Rights Organization indicated that they were bringing this action as a class action as well as on their own behalf. On the plaintiffs' motion, having determined that the Fed.R.Civ.P. 23(a) prerequisites to a class action were satisfied, this Court conditionally certified this cause as a class action under Rule 23(b)(1) and (2), consisting of the following two subclasses:

I. All individuals who have been receiving food stamps in the State of Ohio and whose benefits have been reduced or

terminated and who have asked for a hearing to review the reduction or termination of their benefits but who have not been afforded prompt, definitive and final administrative action by the appropriate state agency within sixty (60) days of the request for said hearing.

II. All individuals who have been receiving AFDC in the State of Ohio and whose benefits have been denied, reduced or terminated and have asked for a hearing to review the denial, reduction or termination of their benefits but who have not been afforded prompt, definitive and final administrative action by the appropriate state agency within ninety (90) days from the date of the request for said hearing.

Order of Oct. 20, 1975.

■ In further support of both their individual and class claims, the plaintiffs have submitted evidence of a massive failure on the part of the state to provide timely hearings and decisions.[1] Affidavit of Edward C. Barrows, Dec. 6, 1976, appended hereto. Out of 985 hearing decisions rendered during the period from July 1, 1975, through October 31, 1976, in food stamp cases, only 172 out of 985, or 17.5%, were issued within the 60-day period required by federal law. During that same period, only 805 out of 1,697 AFDC hearing decisions, or 47.4%, were rendered within the 90-day period required by federal law.

II.

■ By Ohio Revised Code § 5107.02 et seq., the State of Ohio has adopted the AFDC program authorized by Title IV of the Social Security Act of 1935, 42 U.S.C.

§§ 601–44, as amended. Similarly, via Ohio Revised Code § 5101.54, the state has chosen to participate in the food stamp program created by the Food Stamp Act of 1964, as amended, 7 U.S.C. § 2011 et seq. Having so chosen, the state must maintain a system that complies with both Acts, see Townsend v. Swank, 404 U.S. 282, 91 S.Ct. 889, 27 L.Ed.2d 804 (1971); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Parks v. Harden, 504 F.2d 861 (5th Cir. 1974); Rodriguez v. Vowell, 472 F.2d 622 (5th Cir.), cert. denied, 412 U.S. 944, 93 S.Ct. 2777, 37 L.Ed.2d 404 (1973); Lidie v. State of California, 478 F.2d 552 (9th Cir. 1973), and with valid regulations issued by the Secretary of the Department of Health, Education and Welfare in AFDC cases, King v. Smith, 392 U.S. at 333, 88 S.Ct. 2128, and by the Secretary of the Department of Agriculture in food stamp cases. Lidie v. State of California, 478 F.2d 552 (9th Cir. 1973).

42 U.S.C. § 602(a)(4), provides that a state which chooses to participate in the AFDC program must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness." Regulations promulgated pursuant to the AFDC program provide:

An opportunity for a hearing shall be granted to any applicant who requests a hearing because his claim for financial or medical assistance is denied, or is not acted upon with reasonable promptness, and to any recipient who is aggrieved by any agency action resulting in suspension, reduction, discontinuance or termination of assistance. * * *

---

1. Defendants have filed a motion to strike certain portions of the affidavit of Edward Barrows on the grounds that the affidavit contains several statistical analyses without any showing that the affiant was qualified to make those analyses. An examination of the affidavit reveals that the affiant reviewed the hearing decisions in AFDC and food stamp cases on file in the offices of the Ohio Department of Public Welfare [hereafter ODPW], which were issued during the period from July 1, 1975, through October 31, 1976. Each decision rendered during that period was inspected and the "length

of time between the date the hearing request was received by the ODPW and the date a decision was issued was recorded as falling within one of the following categories: 60 days or less, 61–90 days, 91–120 days, 121–150 days, 151 days or more." The affiant then set forth the simple arithmetic percentages of the total cases falling within each of those various categories. It is obvious, therefore, that the "analyses" contained in the affidavit did not call for any special knowledge of statistics, and that the defendants' motion must accordingly be denied.

45 C.F.R. § 205.10(a)(5). That section further mandates that "prompt, definitive, and final administrative action shall be taken within 90 days from the date of the request for a hearing." 45 C.F.R. § 205.10(a)(16).

With respect to food stamp cases, 7 U.S.C. § 2019(e)(8), provides that a state desiring to participate in the program must submit a plan which *"shall"* provide:

> for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of a State agency under any provision of its plan of operation as it affects the participation of such household in the food stamp program.

Regulations promulgated pursuant thereto require:

> Each Agency shall provide any household aggrieved by any action of the State agency or State issuing agency in its administration of the program which affects the participation of the household in the program with a fair hearing before the Agency or with an evidentiary hearing at the local level with a right to appeal to an Agency hearing. When the Agency adopts a system of evidentiary hearings with an appeal to an Agency hearing, it may, in some project areas, permit local evidentiary hearings, and in others, provide for a single hearing before the Agency. *Prompt, definitive and final administrative action must be taken by the State agency within 60 days of any request for a hearing.*

7 C.F.R. § 271.1(*o*) (*emphasis added*).

It is thus clear that within 90 days in AFDC cases, and within 60 days in food stamp cases, of a request for an administrative hearing by an aggrieved recipient of aid, the state must take "prompt, definitive and final administrative action." An examination of the uncontested evidence in this case, *see* Affidavit of Edward C. Barrows attached hereto in the appendix, conclusively establishes that the state is out of compliance with federal law. In fact, the defendants have admitted that "they are presently out of compliance with the Federal Regulations." Memorandum in Opposition to Plaintiffs' Cross Motion for Summary Judgment at 9, Dec. 13, 1976.

In spite of the fact that the defendants admit that they are not in compliance with the federal regulations, they assert that they are entitled to judgment as a matter of law for the following reasons.

### III.

The defendants' first argument is that the plaintiffs lack standing to prosecute this action because they have not suffered any injury in fact. The defendants point out that under the provisions of federal and state regulations, the plaintiffs had a right to continue to receive benefits in those cases where benefits were reduced or terminated until their appeal is decided. 7 C.F.R. § 271.1(n)(1) and (4); 45 C.F.R. § 205.10(a)(6); ODPW, Food Stamp Certification Handbook ¶¶ 2530, 2531; ODPW Public Assistance Manual § 684. However, those provisions apply only where the aggrieved party requests a hearing within ten (10) days of the notice of the adverse action. In addition, those regulations do not benefit a recipient who requests increased benefits and whose request is denied pending the hearing. In fact, none of the representative plaintiffs were able to take advantage of these provisions.

Plaintiffs Queen Roddy and Regenna Peppers applied for increased benefits and were ineligible to take advantage of the non-suspension and non-termination provisions. Plaintiff Anna Peppers was not benefited because she failed to request a hearing within ten (10) days. Finally, Plaintiff Francis Zaborski's application for benefits was denied, and she too was not helped.

The central thrust of the defendants' argument appears to be that the plaintiffs do not have standing because their cases are moot. However, at the time this action was certified as a class action, neither Plaintiff Zaborski nor Plaintiff Regenna Peppers had received final decisions on their appeals. The fact that three out of four of the representative parties have now received final administrative action on their

**366**

appeals is immaterial as respects the class action aspect of the suit. *Sosna v. Iowa*, 419 U.S. 393, 397–403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). There is still a live controversy between the defendants and the members of the class certified by the Court. As there was a named plaintiff who had a case or controversy with the defendants at the time the complaint was filed, as well as at the time the class was certified, this suit may be maintained on behalf of the class though the claims of some of the named plaintiffs have become moot. Defendants' motion for summary judgment on this ground must accordingly be denied.

### IV.

Defendants' second argument appears to be that this Court is barred by the Eleventh Amendment from issuing injunctive relief in this action. Defendants assert that the issuance of an injunction by this Court ordering the defendants to comply with the federal regulations in this case would require the state to hire additional personnel to hear cases, and that this can be done only by the expenditure of state funds. Their argument concludes that this Court lacks the authority to compel an expenditure of state funds by the legislature.

■ To the extent that the defendants' Eleventh Amendment argument is directed against an award of retroactive benefits, it has some merit. There is no merit to their contention that that Amendment bars prospective injunctive relief which would have an effect on the state's revenues. As early as 1908, the Supreme Court held that the Eleventh Amendment does not bar a suit against a state agency where the relief sought is prospective injunctive relief only. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court observed:

As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night. The injunction issued in *Ex parte*

*Young* was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions. Later cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young*. In *Graham v. Richardson*, 403 U.S. 365 [91 S.Ct. 1848, 29 L.Ed.2d 534] (1971), Arizona and Pennsylvania welfare officials were prohibited from denying welfare benefits to otherwise qualified recipients who were aliens. In *Goldberg v. Kelly*, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970), New York City welfare officials were enjoined from following New York State procedures which authorized the termination of benefits paid to welfare recipients without prior hearing. But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often inevitable consequence of the principle announced in *Ex parte Young, supra.*

415 U.S. at 667–68, 94 S.Ct. at 1357–1358. Insofar as the defendants' motion for summary judgment is based on the Eleventh Amendment, it must be denied.

### V.

■ The defendants' final argument in support of their motion for summary judgment is that the state is in substantial compliance with the federal regulations and "responsible public officials are working to and will solve the problems with or without judicial participation." Defendants' Motion for Summary Judgment at 11, June 23, 1976.

While the Court believes that the defendants have been taking steps to come into compliance with the federal regulations, the Court is not satisfied that the defendants' efforts have gone far enough. *See* Affidavit of Edward C. Barrows attached hereto in the appendix. The defendants' motion for summary judgment insofar as it is based on this issue, must also be denied.

## VI.

As noted above, the plaintiffs have also moved for summary judgment. As the Court finds that there are no genuine issues as to any material facts and that the plaintiffs are entitled to judgment as a matter of law, the Court will grant the plaintiffs' motion for summary judgment. This decision is based solely on the fact that the state has failed to comply with the federal regulations set out above. The Court has found it unnecessary therefore to reach the merits of the plaintiffs' constitutional challenge.

However, the Court does find that the plaintiffs' constitutional claims are substantial and that the Court has jurisdiction under 28 U.S.C. § 1343, with a cause of action stated pursuant to § 1983. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). It is therefore clear that the Court has pendent jurisdiction to hear the plaintiffs' claim of conflict between federal and state law. *Hagans v. Lavine,* 415 U.S. at 536, 94 S.Ct. 1372.

For relief the plaintiffs have asked the Court to order the defendants to comply with the sixty (60) and ninety (90) day time limits, order the defendants to pay $100 to any AFDC or food stamp applicant or recipient who does not receive final administrative action on his appeal within the required time, and order the defendants to schedule a hearing on Regenna Peppers' appeal within one (1) week.

As noted above, the Court believes that the defendants have in good faith been endeavoring to comply with the federal regulations even though those efforts have been insufficient. The Court will not,

therefore, grant the plaintiffs' request for a $100 penalty at this time, but will reconsider that request in the future if the defendants fail to comply with the Order that will subsequently be entered in this case. The Court will, however, order the defendants to schedule a hearing on Regenna Peppers' appeal within ten (10) days of the date this Order is filed.

Additionally, the Court will grant the defendants thirty (30) days from the date this Order is filed to submit a proposed order which shall set forth a specific plan establishing that the defendants will be in full compliance with the federal regulations discussed herein within ninety (90) days of the submission of the proposed order. Should the defendants fail to submit a satisfactory order, the Court will enter its own order.

For the foregoing reasons, it is accordingly

ORDERED that the defendants' motion for summary judgment should be, and hereby is, denied.

IT IS FURTHER ORDERED that the defendants schedule a hearing on Regenna Peppers' appeal within ten (10) days of the date this Order is filed.

IT IS FURTHER ORDERED that within thirty (30) days from the date this Order is filed, the defendants are to submit a proposed order which shall set forth a specific plan establishing that the defendants will be in full compliance with the federal regulations discussed herein within ninety (90) days of the submission of the proposed order.

## JUDGMENT ORDER

In this Court's Opinion and Order of April 15, 1977, the Court ordered the defendants to submit a proposed order which would set forth a specific plan establishing that the defendants will be in full compliance with the federal regulations discussed in that order within ninety days of the submission of the proposed order. The defendants chose not to comply with the Court's order and instead filed a Motion to Modify Judgment. This cause is therefore

before the Court on that Motion and for entry of a final Order.

▇ The Court feels that it has adequately addressed the issues raised in the defendants' Motion in Part IV of the Court's Opinion and Order of April 15, 1977. The basic thrust of the defendants' argument is that it does not have sufficient funds to comply with federal law. This argument has repeatedly been rejected by the courts to which it has been directed. *See Bradley v. Milliken*, 540 F.2d 229, 242–245 (6th Cir. 1976), *cert. granted*, 429 U.S. 958, 97 S.Ct. 380, 30 L.Ed.2d 325 (1976), and the cases cited therein. And because this Court also finds the argument to be wholly without merit, the defendants' Motion is hereby denied.

For the reasons set forth in the Opinion and Order of April 15, 1977, it is hereby

ORDERED, ADJUDGED and DECREED, that effective August 1, 1977, the defendants, their successors in office, their agents and employees, and all others in active concert and participation with them are enjoined from:

a. Failing to take final administrative action within 60 days after the request for the hearing in food stamp cases where the application has been denied or benefits have been reduced or terminated; and

b. Failing to take final administrative action within 90 days after the request for the hearing in AFDC cases where the application has been denied or benefits have been reduced or terminated; and it is further

ORDERED, ADJUDGED and DECREED, that the present practices of defendants in failing to take final administrative action within 60 days after a hearing has been requested in food stamp cases and within 90 days after a hearing has been requested in AFDC cases violates the applicable federal regulations and the Supremacy clause of the United States Constitution.

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| Anna M. Peppers, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| -vs- | : Case No. C–75–329 |
| | : |
| Raymond F. McKenna, et al., | : Judge Walinski |
| | : |
| Defendants. | : |

### AFFIDAVIT

### RE TIME DELAYS BETWEEN REQUESTS FOR STATE HEARINGS AND DECISIONS

STATE OF OHIO:   SS
COUNTY OF FRANKLIN:

Edward C. Barrows, being first duly affirmed, deposes and says:

1. I am an attorney admitted to the practice of law in the State of Ohio, residing in Franklin County. At the request of attorneys for the plaintiffs, I conducted an investigation of the time delays between requests for state hearings and the rendering of decisions resulting from those hearings, for decisions rendered during the period

from July 1, 1975 through October 31, 1976, for the Food Stamp (FS) and Aid to Families with Dependent Children (AFDC) programs in the State of Ohio.

2. This investigation was accomplished through an inspection of the hearing decisions maintained by the Ohio Department of Public Welfare (ODPW) in the office of the Bureau of State Hearings, 32nd Floor, State Office Tower, 30 E. Broad Street, Columbus, Ohio, during the period from November 8–15, 1976. Each hearing decision rendered during the sixteen-month period was visually inspected and the length of time between the date the hearing request was received by the ODPW and the date a decision was rendered was recorded as falling within one of the following categories: 60 days or less, 61–90 days, 91–120 days, 121–150 days, 151 days or more.

3. For the 16-month period, I found the following results for the Food Stamp Program:

Number of Decisions Rendered By Month By Time Delay
Between Request Date And Date Of Decision

| Month | 60 days or less | 61–90 days | 91–120 days | 121–150 days | 151 or more days | Total |
|---|---|---|---|---|---|---|
| July 1975 | 21 | 31 | 6 | 3 | 2 | 63 |
| August | 14 | 21 | 21 | 4 | 3 | 63 |
| September | 27 | 34 | 9 | 3 | 4 | 77 |
| October | 11 | 15 | 16 | 2 | 4 | 48 |
| November | 7 | 26 | 12 | 5 | 2 | 52 |
| December | 5 | 30 | 23 | 6 | 2 | 66 |
| January 1976 | 6 | 12 | 16 | 13 | 13 | 60 |
| February | 11 | 19 | 20 | 12 | 12 | 60 |
| March | 2 | 17 | 18 | 15 | 6 | 58 |
| April | 0 | 6 | 4 | 5 | 4 | 19 |
| May | 4 | 26 | 19 | 7 | 21 | 76 |
| June | 3 | 26 | 19 | 7 | 21 | 76 |
| July 1976 | 11 | 13 | 9 | 2 | 12 | 47 |
| August | 28 | 27 | 13 | 8 | 18 | 94 |
| September | 17 | 15 | 10 | 6 | 36 | 84 |
| October | 5 | 12 | 2 | 2 | 7 | 28 |
| GRAND TOTAL | 172 | 330 | 217 | 105 | 161 | 985 |

These raw figures for numbers of decisions translated into the following percentages:

Percentage of Monthly Decisions By Time Delay Between
Request Date and Date of Decision

| Month | % 60 days or less | 61–90 days | 91–120 days | 121–150 days | 151 or more days |
|---|---|---|---|---|---|
| July 1975 | 33.3 | 49.2 | 9.5 | 4.8 | 3.1 |
| August | 22.2 | 33.3 | 33.3 | 6.3 | 4.8 |
| September | 35.1 | 44.2 | 11.7 | 3.9 | 5.2 |
| October | 22.9 | 31.2 | 33.3 | 4.2 | 8.3 |
| November | 13.5 | 50.0 | 23.1 | 9.6 | 3.8 |
| December | 7.6 | 45.4 | 34.8 | 9.1 | 3.0 |
| January 1976 | 10.0 | 20.0 | 26.7 | 21.7 | 21.7 |
| February | 14.9 | 25.7 | 27.0 | 16.2 | 16.2 |
| March | 3.4 | 29.3 | 31.0 | 25.9 | 10.3 |
| April | 0 | 31.6 | 21.0 | 26.3 | 21.0 |
| May | 5.3 | 34.2 | 25.0 | 15.8 | 19.7 |
| June | 3.9 | 34.2 | 25.0 | 9.2 | 27.6 |

Percentage of Monthly Decisions By Time Delay Between
Request Date and Date of Decision—Continued

| Month | % 60 days or less | 61–90 days | 91–120 days | 121–150 days | 151 or more days |
|---|---|---|---|---|---|
| July 1976 | 23.4 | 27.6 | 19.1 | 4.2 | 25.5 |
| August | 29.8 | 28.7 | 13.8 | 8.5 | 19.1 |
| September | 20.2 | 17.8 | 11.9 | 7.1 | 42.8 |
| October | 17.8 | 42.8 | 7.1 | 7.1 | 25.0 |
| Total | 17.5 | 33.5 | 22.0 | 10.6 | 16.3 |

4. Thus, out of 985 food stamp hearing decisions rendered in the 16-month period, only 172 or 17.5% were rendered within the 60-day period required by law.

For the 16-month period, I found the following results for the AFDC Program:

Number of Decisions Rendered by Month by Time Delay Between
Request Date and Date of Decision

| Month | 60 days or less | 61–90 days | 91–120 days | 121–150 days | 151 or more days | Total |
|---|---|---|---|---|---|---|
| July 1975 | 50 | 35 | 22 | 14 | 10 | 131 |
| August | 24 | 25 | 26 | 10 | 5 | 90 |
| September | 45 | 63 | 16 | 7 | 11 | 142 |
| October | 15 | 46 | 28 | 3 | 6 | 98 |
| November | 9 | 54 | 40 | 19 | 6 | 128 |
| December | 17 | 36 | 43 | 11 | 4 | 111 |
| January 1976 | 14 | 19 | 22 | 16 | 10 | 81 |
| February | 5 | 15 | 18 | 13 | 14 | 65 |
| March | 7 | 27 | 27 | 21 | 12 | 94 |
| April | 1 | 7 | 24 | 5 | 7 | 44 |
| May | 3 | 26 | 28 | 24 | 28 | 109 |
| June | 4 | 27 | 39 | 19 | 25 | 114 |
| July 1976 | 12 | 21 | 15 | 11 | 25 | 84 |
| August | 52 | 40 | 23 | 15 | 47 | 176 |
| September | 41 | 26 | 26 | 18 | 50 | 161 |
| October | 21 | 19 | 4 | 8 | 17 | 69 |
| GRAND TOTAL | 319 | 486 | 401 | 214 | 277 | 1697 |

Since the law requires hearing decisions under the AFDC Program to be rendered within 90 days the percentages for the first two time categories have been combined below:

Percentage of Monthly Decisions By Time Delay Between
Request Date and Date of Decision

| Month | % 90 days or less | 91–120 days | 121–150 days | 151 or more days |
|---|---|---|---|---|
| July 1975 | 64.9 | 16.8 | 10.7 | 7.6 |
| August | 54.4 | 28.9 | 11.1 | 5.6 |
| September | 76.0 | 11.3 | 4.9 | 7.7 |
| October | 62.2 | 28.6 | 3.1 | 6.1 |
| November | 49.2 | 31.2 | 14.8 | 4.7 |
| December | 47.7 | 38.7 | 9.9 | 3.6 |
| January 1976 | 40.7 | 27.2 | 19.8 | 12.3 |
| February | 30.8 | 27.7 | 20.0 | 21.5 |
| March | 36.2 | 28.7 | 22.3 | 12.8 |
| April | 18.2 | 54.5 | 11.4 | 15.9 |
| May | 26.6 | 25.7 | 22.0 | 25.7 |
| June | 27.2 | 34.2 | 16.7 | 21.9 |

**371**

Percentage of Monthly Decisions By Time Delay Between
Request Date and Date of Decision—Continued

| Month | % 90 days or less | 91–120 days | 121–150 days | 151 or more days |
|---|---|---|---|---|
| July 1976 | 39.3 | 17.8 | 13.1 | 29.8 |
| August | 51.7 | 12.1 | 8.5 | 26.7 |
| September | 41.6 | 16.1 | 11.2 | 31.0 |
| October | 58.0 | 5.8 | 11.6 | 24.6 |
| TOTAL | 47.4 | 23.6 | 12.6 | 16.3 |

5. Thus, out of 1697 AFDC hearing decisions rendered in the 16-month period, only 805 or 47.4% were rendered within the 90-day period required by law.

6. I also examined the pending cases file for FS and AFDC to determine how many hearing requests are pending decisions in these two programs and how old the pending cases are. As of November 15, 1976, I found the following:

PENDING CASES—BY DATE OF REQUEST

| Month | Food Stamps | AFDC |
|---|---|---|
| November 1976 | 0 | 8 |
| October | 43 | 119 |
| September | 80 | 191 |
| August | 39 | 92 |
| July | 36 | 48 |
| June | 17 | 46 |
| May | 8 | 26 |
| April | 9 | 16 |
| March | 10 | 20 |
| February | 8 | 14 |
| January | 3 | 8 |
| December 1975 | 1 | 6 |
| November | 4 | 3 |
| October | 3 | 2 |
| September | 0 | 4 |
| March 1975 | 1 | 0 |
| February 1974 | 1 | 0 |
| TOTAL | 263 | 593 |

7. A total of 263 requests for hearings in the Food Stamp Program have been received by ODPW in which no hearing decision has been rendered. Of these food stamp hearing requests, 53.2% have been pending more than 60 days. The oldest pending food stamp hearing request was received by ODPW in February, 1974.

8. A total of 593 requests for hearings in the ADC program have been received by ODPW in which no hearing decision has been rendered. Of these ADC hearing requests, 32.5% have been pending more than 90 days. The oldest pending ADC hearing requests were received by ODPW in September, 1975.

/s/ Edward C. Barrows
Edward C. Barrows