**Marilyn MOORE et alia, Plaintiffs,**

v.

**Cesar PERALES, etc., et alia, Defendants.**

**No. CV–85–1638.**

United States District Court, E.D. New York.

June 29, 1988.

Brooklyn Legal Services, by Marc Cohan, Brooklyn, N.Y., Queens Legal Services, by Suzanne King, for plaintiffs.

Robin Levine, (Gross), Corp. Counsel, New York City, for City defendant.

Robert Abrams, Atty. Gen. of State of N.Y., New York City by Judith Kaufman, Evelyn Tannenbaum, for State defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

In May 1985, plaintiffs brought this class against defendants seeking legal, injunctive, and declaratory relief for violations of the due process, equal protection, and supremacy clauses of the United States Constitution and of plaintiffs' rights under the provisions of the Aid for Families with Dependent Children statute and regulations, 42 U.S.C. § 602 and 45 C.F.R. § 205, and the Food Stamp Act and regulations, 7 U.S.C. § 2020 and 7 C.F.R. § 273.15. On August 20, 1985, I granted leave to plaintiff-intervenors to intervene, and on February 21, 1986, I certified the action as a class action.

On September 22, 1987, as a result of their failure to appear for their own depositions, nine of the named plaintiffs and plaintiff-intervenors withdrew their claims for damages subject to renewal should they appear for deposition at anytime up to 30 days before trial. Also, the allegations in the complaint relating to their claims were withdrawn, save for those allegations related to their requests for a fair hearing and defendants' actions with respect to those plaintiffs' claims thereafter.

The matter is currently before me on plaintiffs' motion for partial summary judgment. Plaintiffs request an injunction directing defendants to schedule, issue decisions pursuant to, and comply with decisions after fair hearings ("DAFH") within the time limits set forth in 42 U.S.C. § 602 and 7 C.F.R. § 273.15. Plaintiffs also request that Social Service Law § 22 and 18 NYCRR § 388.18 be declared unconstitutional as a result of their conflict with applicable federal regulations and, as a result, the supremacy clause of the United States Constitution.

Because I find that plaintiffs have failed to establish that there is no genuine issue as to any material fact or that the plaintiff class is entitled to judgment as a matter of law, plaintiffs' motion is denied.

Before discussing the events that are involved in this case, it will be helpful to set forth the statutes that form the background and bases for this litigation.

The Federal Food Stamp program is set forth in 7 U.S.C. §§ 2011–2029. The program is to be administered by participating states. 7 U.S.C. § 2019. The procedural requirements for participating states to comply with are set forth in 7 U.S.C. § 2020. The Secretary of Agriculture promulgated regulations establishing deadlines for holding a fair hearing, see 7 U.S.C. § 2020(e)(10), rendering a DAFH (60 days after a request for a hearing), and compliance with such decisions (10 days). See 7 C.F.R. § 273.15(c)(1).

New York State Social Services Law ("SSL") provides that the state Department of Social Services shall take responsibility for the administration of the Food Stamp Program, and the state has chosen to supervise the program through local agencies, including the New York City Department of Social Services, supervised by defendant Gross. It is the state, however, that is ultimately responsible for ensuring that a fair hearing is held and that compliance with the DAFH is accomplished through the local agencies.

The Aid to Families with Dependent Children ("AFDC") program is set forth in 42 U.S.C. §§ 601–616. The procedural requirements are set forth in 42 U.S.C. § 602, which provides in part that "(a) a State plan for aid and service to needy families with children must ... (4) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness." The corresponding regulation is set forth in 45 C.F.R. § 205.10(a)(16): "Prompt, definitive, and final administrative action shall be taken within 90 days from the date of the request for a hearing." Final administrative action is defined in 45 C.F.R. § 205.10(a)(18): "When a hearing decision is favorable to the claimant, or when the

agency decides in favor of the claimant prior to the hearing, the agency shall promptly make corrective payments retroactively to the date the incorrect action was taken."

As with the Food Stamp Program, the state Department of Social Services under AFDC is responsible for the conduct of the fair hearing. Again, it is the local agencies that administer the program.

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure must be denied if there are facts necessary for a judgment in the movant's favor as to which there is "genuine issue." A genuine issue exists when "the evidence presents sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The question of what weight should be assigned to competing inferences remains within the province of the factfinder at trial. *Belfiore v. New York Times Co.*, 826 F.2d 177, 180 (2d Cir.1987), *quoting Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.1987).

Local Rule 3(g) requires that the party moving for summary judgment provide a brief statement of the material facts as to which it contends there is no material issue. Plaintiffs' statement consists of a massive compilation of evidence in the form of statistical tables and narrative. From these tables and narrative and defendants' responses, it is possible to infer an undisputed set of facts, albeit, as noted hereafter, not a complete enough set to establish that plaintiffs are entitled to judgment as a matter of law.

Plaintiff Maria Ramos, an AFDC recipient, requested a hearing challenging decisions with respect to her AFDC and food stamp benefits on August 30, 1984. A hearing was held on December 2, and a favorable DAFH was rendered on December 13, 1984. As of March 19, 1985, the state had not complied with the decision.

Plaintiff Juana Padilla asked for a fair hearing on July 30, 1984, on a decision denying AFDC benefits. On August 28, the hearing was held. On September 12, a favorable decision was rendered. As of October 3, 1984, the defendants had not complied with the decision.

Plaintiff Delores Ramirez requested a fair hearing on August 16, 1984, to review a change in her AFDC benefits. She requested an adjournment to November 15, 1984. A favorable decision was rendered on December 20. On January 9, 1985, she complained of non-compliance.

Plaintiff Lydia Ramos requested a fair hearing on June 20, 1984, on a change in her benefits. On July 23 the hearing was held, and a favorable DAFH was rendered on August 31. Ms. Ramos complained of non-compliance from late October 1984 until late February 1985.

Plaintiff Richard Campbell requested a fair hearing on August 16, 1983 to review a reduction in his food stamp benefits. On September 15, 1983, a hearing was held, and a favorable DAFH was rendered on October 7, 1983. Over a course of nineteen months he filed numerous complaints noting lack of compliance by the defendants.

Paulina Bell requested two fair hearings; the first was requested September 14 and held October 16, 1984. A DAFH was rendered November 9, 1984. The second was requested January 20, 1985, and held on February 28. A DAFH was rendered on February 28. As of May 10, 1985, she had not obtained compliance.

Trinidad Diaz requested a fair hearing on December 6, 1983, to challenge adverse AFDC and food stamp decisions. The hearing was held on January 10, 1984, and a favorable DAFH was rendered March 29. Mr. Diaz complained of non-compliance on May 9, 1984.

Julian Hampton requested a fair hearing on an unfavorable AFDC decision on March 19, 1985. It was held on April 29, 1985, and on June 19 a favorable DAFH was rendered. On July 22, 1985, he complained of non-compliance.

In each of these cases compliance was untimely under the applicable AFDC and food stamp regulations.

From 1982 through 1986 in New York City there were over 30,000 AFDC

DAFH's; between one-third and one-half of those resulted in reversal in favor or the beneficiaries and required local compliance. During the same time period, there were over 5,000 DAFH's under the Food Stamp Program, over half of which resulted in a decision in favor of the beneficiary and required compliance. Thus, over 10,000 cases a year under the two programs require some sort of compliance by defendants with DAFH's.

Plaintiffs have submitted statistical tables [1] which establish that the monthly average times from request to DAFH in the administration of the AFDC program in New York City in the period January 1985 through February 1986 ran from a low of 54 to a high of 79 days, leaving local authorities with between periods running from a low of 11 to a high of 36 days to comply with AFDC decisions. The average time for the entire year 1985 was 58 days from request to DAFH and for the part of 1986 covered by plaintiff's tables, 66 days. Within this period of time, a marked increase in the delay is apparent between June and October 1986.[2]

In food stamp cases, similar statistics show that between January 1985 and October 1986 DAFH's were issued on averages running from a low of 46 to a high of 70 days after request. Toward the end of the period, in September and October, the delay was, on average, about 65 days from request to DAFH. The state defendant has submitted evidence to show that there has been a recent decline to 52 days. The improvement makes it possible for the state, acting with the city, to meet the federal guidelines requiring a DAFH within 60 days after request.

Prior to June 1985 it took the city defendant on average longer than 10 days—the maximum in food stamp cases—to comply with DAFH's. After June 1985 the city defendant improved its procedures. In over 95% of AFDC cases in the period from February 1986 to February 1987 compliance was achieved in under 30 days, which would put compliance within 90 days if the decisions were rendered in under 60 days. In food stamp cases during the same period, there was compliance within 10 days, as required by law, in over 90% of the cases. Plaintiffs have provided no statistics past these dates. The city defendant, however, indicates that it is taking steps to improve its performance in processing both AFDC and food stamp cases.

## DISCUSSION

This Court has jurisdiction over plaintiffs' claims based on alleged violations of the AFDC Act and the Food Stamp Act under 28 U.S.C. § 1331, which provides for jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." As there is no longer a jurisdictional amount required of such claims, plaintiffs, who cannot plead such amount, no longer need allege a "non-frivolous" claim for violation of a constitutional right under 42 U.S.C. § 1983, establish jurisdiction over that claim on 28 U.S.C. § 1343, and then bring their statutory claim on the principle of pendent jurisdiction. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Shands v. Tull*, 602 F.2d 1156 (3d Cir.1979).

Jurisdiction over plaintiffs' claims for violations of their due process rights secured by the fifth and fourteen amendments to the Constitution does exist as well under 28 U.S.C. § 1343(a)(3). Section 1983 of title 42 of the United States Code authorizes such

---

**1.** These figures, as corrected by the state defendant, are as follows:

NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES CASES

| MONTH | AFDC 1985 | 1986 | FOOD STAMPS 1985 | 1986 |
|---|---|---|---|---|
| Jan | 71.85 | 67.17 | 70.11 | 60.57 |
| Feb | 60.16 | 60.50 | 53.54 | 54.29 |
| March | 52.99 | 59.25 | 48.35 | 58.02 |
| April | 51.43 | 57.22 | 47.46 | 53.84 |
| May | 53.73 | 57.37 | 45.70 | 51.43 |
| June | 54.27 | 57.38 | 46.04 | 50.00 |
| July | 56.37 | 68.35 | 49.98 | 57.06 |
| Aug | 58.37 | 74.93 | 51.54 | 60.41 |
| Sept | 55.70 | 78.10 | 48.78 | 66.13 |
| Oct | 58.16 | 78.91 | 50.79 | 65.45 |
| Nov | 59.47 | —— | 54.23 | —— |
| Dec | 65.00 | —— | 55.91 | —— |

**2.** For the month of October 1987, the state has shown a figure of 62 days from date of request to DAFH.

a claim, and plaintiffs' claim of violation of due process rights falls clearly within the purview of that statute. *See Hagans, supra.*

Finally, this Court has jurisdiction to consider the claim that Social Service Law § 22 and 18 NYCRR § 358.18 are unconstitutional as violative of the supremacy clause under §§ 1331 and 2201. As noted above, § 1331 provides for jurisdiction of cases arising under the laws and Constitution of the United States.

■ Further, even though the claims of some of the named plaintiffs may have become moot through satisfaction of their requests for compliance with their DAFH, this is immaterial to the class action aspects of this suit seeking injunctive and declaratory relief. *Sosna v. Iowa*, 419 U.S. 393, 397–403, 95 S.Ct. 553, 556–559, 42 L.Ed.2d 532 (1975). A live controversy exists between plaintiff class and defendants, and there exists at least one plaintiff who had a case or controversy with the defendants at the time the case was filed and the class certified and whose situation is capable of repetition otherwise escaping review. Accordingly, this suit is not moot, and plaintiffs' motion for summary judgment is appropriately considered on its merits. *See Peppers v. McKenna*, 81 F.R.D. 361, 365–66 (N.D.Ohio 1977), *aff'd*, 611 F.2d 373 (6th Cir.1979).

Plaintiffs claim that defendants should be enjoined from violating the fair hearing requirements of the AFDC provisions of the Social Security Act, 42 U.S.C. § 602, and the regulations promulgated by the Secretary of Health and Human Services pursuant to that act. Before considering the merits of that claim, however, I must first consider whether a cause of action exists that will support such a claim for relief and what the elements of that cause of action are.

Plaintiffs note in their reply brief that "[a] recital of precedent is hardly necessary for the proposition that where a State elects to participate in federally funded public assistance programs it must comply with applicable federal law and procedures." It is true that it is well established that, where a state chooses to participate in a federally funded program, it must disburse those funds in accordance with federal requirements, *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and that courts have universally recognized the right of private litigants to bring an action to compel state authorities to comply with the requirements of the AFDC provisions. *See, e.g., Roberge v. Philbrook*, 518 F.2d 162 (2d Cir.1975). The question remains, however, what must a plaintiff demonstrate in order to succeed in such an action.

■ As far as the fair hearing requirements of AFDC are concerned, defendants claim that they need only be in "substantial compliance" with the 90–day requirement of the statute. Plaintiffs, on the other hand, claim that anything but strict compliance with the time period required will support a claim for an injunction.

In the only court of appeals case to consider the issue, *Shands v. Tull*, 602 F.2d 1156 (3d Cir.1979), the court held that only substantial compliance by the state with the AFDC time requirements is required. The court found that 96% compliance was acceptable. The Third Circuit noted that the AFDC program provides that Congress may discontinue a state program where there has been a failure to comply "substantially" with the requirements of 42 U.S.C. § 602(a). 602 F.2d at 1160, *citing* 42 U.S.C. § 604(a)(2). The court noted further that the statute provides bonuses for states whose error rate in eligibility determinations is less than 4%. *Id., citing* 42 U.S.C. § 603(j). These provisions, the court found, were evidence that Congress intended less than strict compliance with the time requirements of the statute.

Plaintiffs attempt to avoid the implication of *Shands* by two arguments. First, plaintiffs cite numerous cases involving non compliance with a court order or consent decree, *e.g., Alexander v. Hill*, 707 F.2d 780 (4th Cir.1983), in which strict compliance is required. These cases, as noted in one of them, are not apposite. In *Fortin v. Commissioner of Mass. Dep't of Public Welfare*, 692 F.2d 790 (1st Cir.1982), the

court, in a case involving a contempt of a consent decree prescribing the time for making an eligibility determination, noted that *Shands* involved appeals and, as a result, did not apply. In all events, issues of congressional as opposed to judicial intent are very different.

Plaintiffs also attempt to argue that *Shands* does not control because the total number of appeals involved in that case was much smaller than those involved in New York where up to 80% of the appeals require some form of action. However, when only those appeals requiring some sort of action are taken into account, the compliance level, which the circuit court in *Shands* found tolerable, was only 76%. The argument that the total number of cases involved in *Shands* is much lower than that involved in the present case is also not persuasive. It is obvious that New York City is very big and that whatever percent level of non-compliance there is will harm a great many people. That harm would not be lessened, however, by dividing the city into a number of smaller districts and noting that fewer people are harmed in each district than in all the city. It is proportion that counts.

Finally, plaintiffs ignore the essential thrust of *Shands*, which is that in enacting the AFDC provisions Congress did not intend to provide for enforcement, public or private, against those agencies that were in substantial compliance with the law and regulations.

 In considering which defendant if either should be held responsible for failure to meet the fair hearing decision and compliance requirements imposed by AFDC, each defendant urges that they be considered separately. The case relied upon primarily for this proposition is *Nelson v. Sugarman*, 361 F.Supp. 1132 (S.D.N.Y. 1972), in which the district court declined to hold the City of New York responsible for delays in administrative action on welfare claims attributable overwhelmingly to the state. *Nelson*, however, should not control this case.

In AFDC cases, it is the state defendant's goal to issue decisions in no more than 58 days, and the city defendant's goal to comply in no more than 30 days. Often, neither party can fully live up to its goal. Unlike *Nelson*, a failure cannot at this stage be attributed principally to either the state or city defendants. Under AFDC, it is the state agency that is ultimately responsible; it must account to the federal government. *Cf. Florida Dep't of Health & Rehab. Services v. Califano*, 449 F.Supp. 274 (N.D.Fla.1978). The city defendant, however, has been given the responsibility for administering part of the program, and the state cannot meet its responsibilities without the cooperation of the city. Both defendants must bear the burden of cooperating to see that the law is obeyed. Accordingly, the claims against the state and city defendants will be considered together.

 In addition to deciding whether a violation of the AFDC statutes has been established by the undisputed facts as a matter of law, I am asked to exercise the equity powers of a federal court to determine the appropriate relief. In this connection, I "must weigh competing claims and determine where a preponderance of the equities lies." *Rothstein v. Wyman*, 467 F.2d 226, 234 (2d Cir.1972), *cert. denied*, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 *reh'g denied*, 411 U.S. 988, 93 S.Ct. 2276, 36 L.Ed.2d 966 (1973). Specifically, I must balance the harm complained of and the burden of the remedy proposed.

In the present case, I am unable at this stage of the litigation to issue an injunction against defendants based on violations of 42 U.S.C. § 602. The uncontroverted facts do not demonstrate as a matter of law that defendants are not substantially complying with the 90–day requirement of the statute. Furthermore, the uncontroverted facts do not belie defendants' contention that its procedures are improving. I am sitting in equity and must consider such matters as well as the history of prior litigation and the parties' good faith. These are all particularly inappropriate for resolution by summary judgment. At this stage plaintiffs have not shown as a matter of law that defendants are not complying substantially with the AFDC fair hearing require-

ments or are properly enjoined to substantially comply in the future.

### Liability for Violation of Food Stamp Program

■ Unlike AFDC, the Food Stamp Program has no long history of private litigants seeking to enforce the statute. Neither side has much to say as to whether private litigants are entitled to sue under 7 U.S.C. §§ 2011 *et seq.* As it turns out, there is a split between the Seventh and the Fifth Circuits on whether the Food Stamp Act implies a private right of action. The Seventh Circuit has allowed a private action, and the Fifth Circuit has not. The issue is novel in this circuit.

In *Tyler v. Mmes. Pasqua & Toloso*, 748 F.2d 283 (1984), the Fifth Circuit noted that the Food Stamp Act provides for action by the Secretary of Agriculture against a state government that violates the act, including seeking injunctions and withholding funds. 748 F.2d at 286, *citing* 7 U.S.C. § 2020(g). The court also noted the advice of the Supreme Court in *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 11, 101 S.Ct. 1531, 1537, 67 L.Ed.2d 694 (1981):

"In legislation enacted pursuant to the spending power, the typical remedy for state non-compliance with federally imposed conditions is not a private cause of action for non-compliance but rather action by the federal government to terminate funds to the state."

Referring to *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979), the Fifth Circuit noted the extensive remedial measures provided for in the statute and saw no reason to provide further remedies. *Id.* Finally, the court stated that nothing in the legislative history would lead to the conclusion that Congress intended to create a private remedy.

In *Haskins v. Stanton*, 794 F.2d 1273, 1275 (7th Cir.1986), the court reached a different result and, while not citing *Tyler*, rejected the Fifth Circuit's argument that the legislative history did not indicate that Congress intended a private right of action.

In its discussion, the Seventh Circuit followed the familiar *Court v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), analysis, which asks: (1) does the statute create a federal right in favor of plaintiffs; (2) what was the legislative intent; (3) is a private right of action consistent with the purposes of the statute; and (4) is the right of action a traditional state law claim?

The court noted that the Food Stamp Act created a right in favor of food stamp recipients, that an action to enforce that right was not a traditional state law claim, and that such action would not be inconsistent with but would further the purposes of the act. The discussion of congressional intent was somewhat more detailed and convincingly demonstrates that Congress intended to permit a private right of action for violation of the act.

When in 1977 Congress amended the section of the act providing for enforcement by the Secretary of Agriculture, the House Agricultural Committee noted:

"The administrative remedies against the state ... should not be construed in any way as abrogating private causes of action against states for failure to comply with federal statutory or regulatory requirements."

H.R.Rep. No. 464, 95th Cong., 1st Sess. 398, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1978, 2327. The committee recognized a host of private actions prior to the amendment. *Id.*, at 414, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 2342. In 1980, the enforcement provisions were amended; and the committee report discussed a private action, the final portion of which is reported in *Bush v. Bays*, 463 F.Supp. 59 (E.D.Va.1978), with approval. H.R.Rep. No. 788, 96th Cong., 2d Sess. 144, *reprinted in* 1980 U.S.Code Cong. & Admin.News 843 at 977. The explicit statement that private rights would not be abrogated and the discussion of the private actions clearly indicate congressional intent to allow a private remedy based on the Food Stamp Act.

I agree with the Seventh Circuit. Indeed, given the legislative history uncovered in *Haskins*, I am sure the Fifth Cir-

cuit would agree as well, given that congressional intent was paramount in its consideration. *Tyler, supra,* 748 F.2d at 286 n. 13; *cf. Mrs. W. v. Tirozzi,* 832 F.2d 748, 754 (2d Cir.1987).

■ Having decided that the Food Stamp Act does support a private cause of action, I now must decide what level of compliance is required of a defendant to avoid liability under that act. No court of appeals has dealt with the issue directly, and none has considered the fair hearing, DAFH, and compliance after DAFH provisions of the act.

The portion of the act that provides for enforcement against non-complying states does not qualify the word "comply" with "substantially." It does, however, mention that enforcement shall not take place if the state can show "good cause." 7 U.S.C. § 2020(g). Thus, enforcement is not contemplated for inadvertent or unavoidable failures to comply with the dictates of the act. Also, much like the AFDC provisions, the Food Stamp Act provides for bonuses to states if the state has a payment error rate of less than 5% and less than the national average. 7 U.S.C. § 2025(c). The act, then, contemplates imperfections in its administration. It would be ironic to issue an injunction against a state administrator who at the same time was receiving a bonus from the Department of Agriculture. Accordingly, I find that only substantial compliance is required. Only a failure to comply substantially with the provisions will incur liability to private parties. Also, for much the same reasons given in considering AFDC, I conclude that I must consider the liability of the state and local defendants together.

■ At this stage in the litigation, I cannot issue an injunction against defendants to comply with the act. It is not clear what defendants' level of compliance is, and on this summary judgment motion I may not draw inferences against them. Furthermore, the equities of the situation are not clear at this point. I cannot measure the relative burdens except by drawing inferences—inferences which are inappropriate at this stage.

### Plaintiffs' Constitutional Claims

■ Plaintiffs claim that defendants' failure to comply fully with the mandate of AFDC and the Food Stamp Act deprives them of a property interest without due process. I infer from their argument that they consider the maximum time periods for action after DAFH to be the constitutional maximums as well.

In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Court recognized a property interest in federally funded benefits and found that the process due in the deprivation of those rights included a post termination hearing. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), set forth the now familiar three-part test for assessing the process due in the deprivation of a property interest: (1) what is the interest; (2) what is the risk of an erroneous deprivation of that interest through the current procedure and what is the value, if any, of additional safeguards; and (3) what is the government's interest in the current procedure and the burden of additional procedures? *Id.,* at 335, 96 S.Ct. at 903.

At this stage, I cannot answer any of the inquiries, save the first. I cannot tell the "risk of error" because I do not know what the rate of compliance is as a matter of undisputed fact; nor on a motion for summary judgment can I infer this fact from the information I have. Also, no information has been presented as to the government's interest on the current procedure or in any alternative procedure.

Accordingly, I decline to grant partial summary judgment on plaintiffs' claims of a due process violation.

### Plaintiffs' Claim for Declaratory Relief

■ Plaintiffs claim that state defendant's regulations providing that DAFH's must take place within 90 days, 18 NYCRR § 358.18, is in direct conflict with federal regulations providing that final action after DAFH in AFDC cases be made within 90 days, 45 C.F.R. § 206.10(a)(5)(i), and in food stamp cases, within 60 days, 7 C.F.R.

§ 273.15. Plaintiffs claim that this violates the supremacy clause and must be declared unconstitutional.

All the evidence presented so far suggests that defendants have been trying with more or less success to meet the federally mandated deadlines and have not been guided by the New York regulations. In addition, the state defendant is currently revising its regulations so as to track the federal regulation.

In its construction of the Declaratory Judgment Act, 28 U.S.C. § 2001, the Supreme Court has held that the act must be confined to actual cases or controversies of a definite and concrete character touching the adverse legal interest of the parties. *Public Service Commission of Utah v. Wycoff,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

While plaintiffs may be able to show that defendants are in some way planning to use the challenged regulation, they have failed to set forth undisputed facts which set forth an actual controversy. Accordingly, I cannot at this time grant plaintiffs the requested declaratory relief.

Because there are disputed issues of material fact and plaintiffs, the movants, are not entitled to judgment as a matter of law, plaintiffs' motion for partial summary judgment is denied.

SO ORDERED.