602 F.2d 1156
 CA 79-2877 Lorraine SHANDS, Individually and on behalf of
all persons similarly situated,
v.
Thomas TULL, Individually and in his capacity as Director of
the Camden County Welfare Board, and G. Thomas Riti,
Individually and in his capacity as Director of the Division
of Public Welfare of the State of New Jersey, and Ann Klein,
Individually and in her capacity as Commissioner of the
Department of Institutions and agencies of the State of New Jersey.
Winslow L. THOMAS, Individually and on behalf of all persons
similarly situated,
v.
David MATHEWS, Individually and in his capacity as Secretary
of Health, Education and Welfare, and Ann Klein,
Individually and in her capacity as Commissioner of the
Department of Institutions and Agencies of the State of New
Jersey, and G. Thomas Riti, Individually and in his capacity
as Director of the Division of Public Welfare of the State
of New Jersey.
Alvania RICHBERG, Individually and on behalf of all persons
similarly situated,
v.
Joseph CALIFANO, Jr., Individually and in his capacity as
Secretary of the U. S. Department of Health, Education and
Welfare, and Ann Klein, Individually and in her capacity as
Commissioner of the Department of Institutions and Agencies
of the State of New Jersey, and G. Thomas Riti, Individually
and in his capacity as Director of the Division of Public
Welfare of the State of New Jersey.
Ann Klein and G. Thomas Riti, Director, New Jersey Division
of Public Welfare, New Jersey Commissioner of
Human Services, Appellants.
 No. 78-2247.
 United States Court of Appeals,
Third Circuit.
 Argued June 5, 1979.
Decided July 24, 1979.
 
 John J. Degnan, Atty. Gen., N. J., Stephen Skillman, Asst. Atty. Gen., Jeffrey W. Jones (argued), Deputy Atty. Gen., Trenton, N. J., for appellants.
 Donald M. Ackerman, Thomas Wuersig, Camden Regional Legal Services, Inc., Camden, N. J., for appellees.
 Before ADAMS, ROSENN, Circuit Judges, and LAYTON, District Judge*.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 In this case we must consider the role of the federal courts in enforcing federal regulations governing state welfare programs that receive federal subsidies. The United States District Court for the District of New Jersey enjoined the State of New Jersey ("New Jersey" or the "State") from violating a federal regulation that requires the State to take final administrative action within ninety days on any appeal from the denial of a claim under the Aid to Families with Dependent Children ("AFDC") program. The district court ordered that in any cases in which the ninety-day limit was exceeded, the State had to pay interim benefits to the aggrieved applicants while their appeals were pending. We reverse.
 
 I.
 
 2
 The appellees ("claimants") sought AFDC benefits from New Jersey. One claimant was applying for initial benefits; another sought an increase in the payments being made to him; a third contested a reduction intended to recoup past payments to which she allegedly had not been entitled. In all of the cases, welfare officials in New Jersey denied the claims, and the claimants took administrative appeals.
 
 
 3
 Under federal regulations, New Jersey should have completed the administrative appeals within ninety days. 45 C.F.R. § 205.10(16) (1978). As the State avers, without dispute, it instead took from 94 to 111 days. In their own behalf and in behalf of all those similarly situated, the claimants brought suit in the federal district court contesting the legality of these delays under the regulation and under the Due Process Clause of the fourteenth amendment. The claimants named as defendants various officials of New Jersey and the Secretary of the federal Department of Health, Education and Welfare ("HEW"). The district court certified the proposed class of plaintiffs.
 
 
 4
 As the district court found on the basis of studies undertaken in the wake of this suit, in the period from November 1976 to January 1977, New Jersey completed 83% Of the administrative appeals (known as "fair hearing decisions") within ninety days. In the period from June 1977 to August 1977, the proportion of timely adjudications had grown to 96%, which represented 400 out of 417 cases. As for the category of cases in which the State, on appeal, changed its initial decision, reports from the first period showed that appeals in only 20% Of those cases were brought to completion within ninety days. By the period from June to August 1977, the figure was 76%. In that period, the 24% Of such appeals exceeding the ninety-day limit constituted merely 17 cases, and in 5 of these cases the State had continued to pay undiminished benefits during the appeals, so that there was no hardship to those particular claimants.
 
 
 5
 The district court granted summary judgment for the claimants. It concluded that the federal regulation setting the ninety-day standard demanded total rather than substantial compliance. To ensure compliance, the court granted a permanent injunction commanding observance of the ninety-day limit, and if the State failed to complete an appeal and implement the decision within ninety days, the court ordered the State to provide the claimant with the requested benefits until administrative action was concluded. This provision for interim relief did not apply to applications for one-time grants. The district court's injunction ran only to the officials of New Jersey and not to the Secretary of HEW. The state officials have appealed. Because the injunction does not end the dispute as to all of the parties it is interlocutory. We have jurisdiction, however, under 28 U.S.C. § 1292(a)(1) (1976). Cf. Hook v. Hook & Ackerman, Inc., 213 F.2d 122, 128-29 (3d Cir. 1954) (grant of permanent injunction interlocutory when other claims between parties still pending before district court).
 
 II.
 
 6
 The claimants allege a violation by the State of the Due Process Clause and of the regulation cited above. New Jersey disputes the jurisdiction of the district court over the claim that the State violated a federal regulation. The claimants, who asserted causes of action under 42 U.S.C. § 1983 (1976), argue that the district court had two grounds on which to exercise jurisdiction: 28 U.S.C. § 1343(3) (1976) and 28 U.S.C. § 1331(a) (1976). Because we find jurisdiction under section 1343(3), we do not reach the issue of jurisdiction under section 1331(a).
 
 
 7
 Section 1343(3) vests jurisdiction in the district court over any civil action
 
 
 8
 To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .
 
 
 9
 The claimants do not advance any argument that 42 U.S.C. § 602(a) (1976), under which the ninety-day regulation was promulgated, is an "Act of Congress providing for equal rights . . . ." Nor do they contend that, within the terms of section 1343(3), 42 U.S.C. § 1983 is such an Act of Congress. See Chapman v. Houston Welfare Rights Organization, --- U.S. ----, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Their argument is that their constitutional claim, brought under section 1343(3), was sufficient to give the district court pendent jurisdiction over the claim concerning the federal regulation.
 
 
 10
 According to Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), a constitutional claim will support pendent jurisdiction if that constitutional claim is not "wholly insubstantial," "obviously frivolous," or "no longer open to question." Although the claimants' constitutional argument may be weak, we hold that it meets this lenient standard and warrants the exercise of pendent jurisdiction. The claimants allege that delays of longer than ninety days in administrative appeals deprive them, without due process, of the property rights in welfare benefits recognized by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).[1] There is authority for the argument that a delay in rendering a decision about property could, at some point, constitute a denial of due process. Discussing a due process claim in a different context, the Supreme Court has written:
 
 
 11
 (T)he possible length of wrongful deprivation of unemployment benefits is an important factor in assessing the impact of official action on the private interests. Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility decisions. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process.
 
 
 12
 Fusari v. Steinberg, 419 U.S. 379, 389, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975) (citations omitted). Accord Mathews v. Eldridge, 424 U.S. 319, 341-42, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[2] Because the withholding of welfare benefits upon which recipients may depend in whole or part for food, clothing, shelter, or medical attention "may deprive an eligible recipient of the very means by which to live while he waits," Goldberg v. Kelly, supra 397 U.S. at 264, 90 S.Ct. at 1018 (emphasis deleted), the period of constitutionally acceptable delay might be relatively short arguably as short as ninety days even for applicants who have initially been declared ineligible.
 
 
 13
 To sustain the exercise of pendent jurisdiction, we need not judge this constitutional claim to be a strong one. In Hagans v. Lavine, supra 415 U.S. at 539-43, 94 S.Ct. 1372, the Supreme Court permitted pendent jurisdiction to be based on the equal protection claim that the classifications in a state regulation were not even "rational." It countenanced jurisdiction even though the earlier case of Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1163, 25 L.Ed.2d 491 (1970), which the dissent quoted, had indicated the likely defeat of this equal protection claim:
 
 
 14
 (T)he intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, (supra). But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients. (citations omitted.)
 
 
 15
 Despite this obstacle to equal protection challenges, the Court in Hagans v. Lavine accepted as a basis for pendent jurisdiction an equal protection claim that a state regulation failed even the minimal test of rationality. As the Court ruled, the purpose and means of the challenged regulation were not "so patently rational as to require no meaningful consideration." Hagans v. Lavine, supra 415 U.S. at 541, 94 S.Ct. at 1381. Relying on Hagans v. Lavine, we hold that the claimants' due process claim here was not so weak "as to require no meaningful consideration" and that it supports pendent jurisdiction over the claim concerning an alleged violation of the federal regulation.[3]
 
 III.
 Congress has directed that
 
 16
 (a) State plan for aid and services to needy families with children must . . . (10) provide . . . that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals . . . .
 
 
 17
 42 U.S.C. § 602(a) (1976). To carry out this provision, HEW has issued the following regulation, on which the claimants rely:
 
 
 18
 Prompt, definitive, and final administrative action shall be taken within 90 days from the date of the request for a hearing (to review administrative denial of a claim for benefits).
 
 
 19
 45 C.F.R. § 205.10(a)(16) (1978). Interpreting this regulation to require actual compliance, and finding the State in violation of that standard, the district court issued an injunction requiring New Jersey to complete its fair hearing decisions within ninety days. It also ordered interim benefits to those claimants whose fair hearing decisions were not completed within the period set by the regulation.
 
 
 20
 The federal regulation is mandatory. Guerrero v. Schmidt, 352 F.Supp. 789, 793 (W.D.Wis.1973); Jeffries v. Swank, 337 F.Supp. 1062, 1066 (N.D.Ill.1971). See also Like v. Carter, 448 F.2d 798 (8th Cir. 1971). We disagree, however, with the district court's decision concerning what the regulation mandates. Although the district court concluded that the regulation requires total compliance, we believe the scheme of the Social Security Act reveals a congressional intent to require only substantial compliance from the states.
 
 
 21
 Under 42 U.S.C. § 604(a)(2) (1976), HEW may discontinue federal support for a state's AFDC program when "in the administration of the plan there is a failure to comply Substantially with any provision required by section 602(a) of this title to be included in the plan." (emphasis supplied.) See 45 C.F.R. § 201.6(a) (1978). And the statute awards bonuses to states whose rate of error in determining eligibility is less than four percent. 42 U.S.C.A. § 603(j) (West Supp.1979).
 
 
 22
 It might be argued that the standard of substantial compliance governs only the discontinuation of federal funds and does not apply to other statutory sections concerning AFDC. It might further be contended that the provision for bonuses does not concern the time taken for determinations of eligibility but rather has to do only with accuracy. Both provisions, however, show an implied intent to hold the states to a standard of substantial compliance and thus to make some allowance for the difficulties of administering an extensive bureaucracy. Moreover, an agency's interpretation of its own regulations is entitled to deference. Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Convincing evidence that HEW might interpret the regulation concerning the ninety-day limit to require only substantial compliance is a letter from the agency to the district court. The letter asserts that HEW has properly discharged its "statutory responsibility to insure that the state defendant substantially complies with the requirements of 45 C.F.R. § 205.10(a)(16)."
 
 
 23
 When federal courts have issued injunctions compelling states to meet the time limits of 45 C.F.R. § 205.10(a)(16) or its predecessor, the courts have been treating instances in which even substantial compliance had not been achieved. Jeffries v. Swank, supra, 337 F.Supp. at 1066 (defendants exceeded time limit "as a general practice"); Peppers v. McKenna, 81 F.R.D. 361 (N.D.Ohio 1977) (state meets time limit in only 47.4% Of AFDC appeals); Labbe v. Norton, Civil No. H-136 (D.Conn. Nov. 4, 1974) (in one period, only 20.5% Of AFDC appeals decided within time limit; in another period, only 9.1%). See also Like v. Carter, 448 F.2d 798, 804 (8th Cir. 1971) (under relevant AFDC time limit, state exceeds deadline in 90% Of cases).[4] Similarly, courts of appeals have upheld injunctions ordering the United States, under welfare programs other than AFDC, to meet requirements for determining eligibility, but the agencies in these cases have failed to attain even substantial compliance with statutory standards. See Caswell v. Califano, 583 F.2d 9, 12-13 (1st Cir. 1978) (nearly half of eligible claimants subject to "lengthy" deprivation of benefits); Barnett v. Califano, 580 F.2d 28, 30 (2d Cir. 1978) (claimants "typically" wait long periods for determination); White v. Mathews, 559 F.2d 852, 855 (2d Cir. 1977), Cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978) (average period of 211.8 days to make determinations that reasonably should take no more than 120 to 180 days).
 
 
 24
 In this case New Jersey has reached substantial compliance. According to the most recent figures available to the district court, the State met the ninety-day limit in 96% Of the AFDC appeals. In only twelve out of 417 cases did eligible claimants wait past ninety days without receiving benefits. At least for the named plaintiffs, the delays past the ninety-day limit were no more than four to twenty-one days. Because the district court applied the legally incorrect standard of requiring 100 per cent compliance, and because the State has achieved the substantial compliance that the Social Security Act and the federal regulations mandate, we reverse the grant of the injunction and the order directing the payment of interim benefits without prejudice to the plaintiffs to renew their application for injunctive relief if, in the future, the State fails to meet the level of substantial compliance that is mandated. Each side to bear its own costs.
 
 
 
 *
 Honorable Caleb R. Layton, 3rd, Senior United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 In urging that delays longer than ninety days violate due process, the claimants might be arguing that the federal regulation setting the ninety-day limit is persuasive authority concerning the process due or that, even without regard to the regulation, the Constitution forbids the protraction of these administrative appeals past ninety days
 
 
 [2]
 In Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 591, 46 S.Ct. 408, 410, 70 L.Ed. 747 (1926), the Court observed that "(p)roperty may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them . . . ." See also Wright v. Califano, 587 F.2d 345, 354 (7th Cir. 1978) (delay a consideration in deciding whether due process has been accorded, but on facts no violation of due process)
 
 
 [3]
 Accord, Like v. Carter, 448 F.2d 798, 801 (8th Cir. 1971), Cert. denied, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972); Andujar v. Weinberger, 69 F.R.D. 690, 694 (S.D.N.Y.1976); Perez v. Lavine, 378 F.Supp. 1390, 1394-95 (S.D.N.Y.1974); Nelson v. Sugarman, 361 F.Supp. 1132, 1136 (S.D.N.Y.1972)
 
 
 [4]
 Even in Nelson v. Sugarman, 361 F.Supp. 1132, 1137 (S.D.N.Y.1972), which interpreted the regulation "as a mandatory prescription requiring actual compliance," the court found that in the categories of cases at issue, the percentage of appeals exceeding the time limit was at least 17.8% To 20.8%. Id. at 1139, 1141 (referring to figures for May to August). In a later unreported opinion, on which the claimants here rely, the same court granted an injunction even though in the last month for which there were figures, only two per cent of the appeals were reported to take more than ninety days. The court added, however, that "it is likely that the number of fair-hearing requests where final administrative action has not been completed within the time required by Section 205.10(a)(16) is considerably greater" than the figures indicated. Nelson v. Sugarman, 71 Civ. 1719 (Dec. 11, 1973), at 5