Connie L. SHACKELFORD, Appellant,

v.

SOCIAL SERVICE BOARD OF NORTH DAKOTA, Appellee.

Civ. No. 9798.

Supreme Court of North Dakota.

Oct. 27, 1980.

Edwin W. F. Dyer III, Legal Assistance of North Dakota, Bismarck, for appellant.

Blaine L. Nordwall, Bismarck, for appellee Social Service Bd. of North Dakota.

VANDE WALLE, Justice.

Connie Shackelford appeals from a decision of the district court of Burleigh County upholding a determination of the Social Service Board of North Dakota (SSB) to terminate Shackelford's Aid to Families With Dependent Children (AFDC) benefits effective March 1, 1978. We affirm.

A detailed chronological account of the facts is vital to a determination of the issues raised on this appeal.

On January 4, 1978, Shackelford's application for AFDC was approved by the Ward County Social Service Board (WCSSB). Her eligibility was based upon a verified pregnancy. Her AFDC grant was approved effective January 1, 1978, and included coverage under the medical assistance program effective December 1, 1977. On February 12, 1978, Shackelford, as the result of a miscarriage, entered a Minot hospital. Due to complications, Shackelford remained hospitalized through March 29, 1978. The day after her hospitalization Shackelford notified an eligibility technician for WCSSB of the miscarriage and was informed that her eligibility for AFDC would expire at the end of February and her case would be closed effective March 1, 1978. On the same day she received the call from Shackelford, the eligibility technician prepared and sent to Shackelford an advance notice of the closing of the case as required by law.

On March 27, 1978, SSB received notice from Shackelford that she was exercising her right to appeal WCSSB's decision to close her case and requesting a hearing on the matter. In her notice of appeal, Shackelford stated as her only grounds:

"I was hospitalized on February 12, 1978 due to miscarriage, am still in the hospital due to complications arising from miscarriage, unable to work, feel that should be covered for medical expenses at least, since my confinement is as a direct result of pregnancy. This expense does not cease on March 1 and it has been one continuous confinement due to complications."

For a variety of reasons, including Shackelford's own request and her relocation from Minot to Bismarck, a fair hearing[1] on the matter was set and postponed on three occasions. Finally, on May 4, 1978, the fair hearing was held in Bismarck. Among those in attendance were Shackelford, her attorney, and her mother. As is the practice when these hearings are held in counties other than the county in which the dispensing county's social service board is located, the WCSSB asked an employee of the county social service board in the county in which the hearing was to take place (Burleigh County, in this case) to represent WCSSB at the hearing. Before the issue cited in Shackelford's notice of appeal could be addressed, her attorney asked the Burleigh County Social Service Board employee if an advance notice of the closing of the case had been sent to Shackelford. The employee had a copy of the advance notice but could not testify regarding whether or not it had been properly mailed to Shackelford. Both Shackelford and her mother testified that the advance notice was never received by Shackelford, her mother, nor anyone on Shackelford's behalf. Because of this testimony, the appeals referee recommended to the SSB that the decision of WCSSB to close Shackelford's case be reversed. At its May 17–18, 1978, meeting the SSB acted in accordance with the appeals referee's recommendation.

On May 26, 1978, the eligibility supervisor for WCSSB wrote to counsel for the SSB.

In her letter the supervisor stated that it was the WCSSB's position that Shackelford gave false testimony regarding advance notice at the hearing. The supervisor stated:

"... We are not in agreement with this decision and would like your legal opinion on what we can do to reconsider the decision. It is noted on the decision received that it states, 'You may request a rehearing within 15 days'. Does this apply only to the appellant or does the county have the same right?"

Shortly after the receipt of this letter, an appeals referee for SSB recommended to SSB that it grant WCSSB's "written request for a rehearing relative to the Social Service Board of North Dakota's May 19th, 1978, decision to reverse Ward County's proposed closing of appellant's case." In the meantime counsel for SSB telephoned the eligibility supervisor for WCSSB and informed her that SSB would take action at its June 1978 meeting relative to her May 26, 1978, letter of inquiry. Through some inadvertence the issue raised in the eligibility supervisor's letter was not presented at the June 1978 SSB meeting and was not acted upon until the July 1978 meeting. At the July meeting it was decided that "... the Ward County Social Service Board's request for a rehearing ... be granted."

On July 27, 1978, an administrative deposition was taken. The purpose of this deposition was to gather information relevant to the mailing of the advance notice to Shackelford. The eligibility technician who spoke with Shackelford on the phone on February 13, 1978, testified as to the preparation and mailing of the advance notice.

After four rehearing dates were set and postponed because Shackelford's whereabouts could not be ascertained, a rehearing was held on October 16, 1978. At this rehearing, the July 27, 1978, testimony of the WCSSB eligibility technician was intro-

1. North Dakota Administrative Code Section 75–01–03–01 states:

"10. 'Fair hearing' means an administrative procedure established pursuant to federal regulations (7 C.F.R. 275.15, 45 C.F.R. 205.10, and 45 C.F.R. 1361.46) and to North Dakota

Century Code chapter 28–32, providing a dissatisfied claimant an opportunity to present the claimant's case directly to the social service board of North Dakota for formal decision."

duced. Also at this rehearing Shackelford again testified relative to the advance notice and this time changed her story to reflect the fact that her grandfather, who had been delivering her mail to her daily while she was hospitalized, delivered the advance notice to her. When asked when she received the notice she stated:

"It was two days before I was going to be dropped. I remember that for a fact."

On November 30, 1978, the SSB reviewed the testimony given at the October 16, 1978, rehearing and upon reconsideration decided to affirm and uphold the original action taken by the WCSSB on March 1, 1978, to close Shackelford's case.

On January 4, 1979, pursuant to the North Dakota Century Code Section 28–32-15, Shackelford appealed the SSB's November 30, 1978, decision to the district court in Burleigh County. In a memorandum opinion dated January 18, 1980, the district court affirmed the November 30, 1978, action of the SSB and dismissed the appeal.

Shackelford raises the following issues in this appeal:

1. Whether or not the SSB acted properly when it treated as a request for a rehearing the issues raised by the WCSSB relative to SSB's reversal of WCSSB's decision to terminate AFDC benefits to Shackelford.

2. Whether or not Shackelford was denied her due–process guarantees by the SSB's ex parte consideration of the matter of a rehearing.

3. Whether or not, without regard to the merits of her original appeal, the entire administrative process in question entitled Shackelford to receive benefits because it was not completed within 90 days as required by law.

Although the facts in this case might enable one to formulate and categorize issues in a variety of ways, there is only one question which must be addressed here: Notwithstanding the maze of procedural regulations regarding the granting and termination of AFDC benefits, may an AFDC recipient give conflicting statements to the SSB and then later claim that she is auto-

matically entitled to benefits because her wrongdoing wasn't discovered and corrected until after a certain time period had expired? We answer in the negative.

Before we examine the issues raised by Shackelford, a brief explanation of the basic statutory and regulatory framework on which the AFDC program rests is in order. Title IV–A of the Social Security Act, codified at 42 U.S.C. § 601, et seq., provides the Federal statutory base for the AFDC program. The overall statutory structure of AFDC is set forth at 42 U.S.C. § 602. Because AFDC is designed to be funded jointly by the Federal and State governments, each participating State has its own statutory scheme as well. In North Dakota the statutory basis for AFDC is found in N.D.C.C. Chapter 50-09. The overall design for AFDC calls for each State participating in the Federal program to designate a State agency (in North Dakota the designated State agency is the Social Service Board of North Dakota) to administer the program. Each designated State agency is then required to design a comprehensive plan that conforms with Federal rules and regulations regarding disbursement of AFDC benefits. In North Dakota the SSB's State plan calls for distribution of AFDC benefits through county social service boards. Specific provisions for administration of AFDC benefits to needy families exist at both the Federal and State levels, with the Federal regulations found at 45 C.F.R. Parts 205, 206, 224, 232, 233, 234, 235, and 237, and State regulations found at Chapter 75–02–01 of the North Dakota Administrative Code. Pursuant to Title XIX of the Social Security Act, "medical assistance" must be made available to the AFDC recipients. 42 U.S.C. § 1396a(a)(10).

Of all the rules and regulations surrounding administration of assistance under the AFDC program, among the most important are those encompassing the right of applicants and recipients to a hearing when a county board determines that aid is to be denied or terminated. The SSB is required to provide hearings to these people under 42 U.S.C. § 602(a)(4), 45 C.F.R. § 205.10, and N.D.C.C. § 50-09 14.

North Dakota Administrative Code Chapter 75–01–03 provides regulations concerning complaints and hearings before the SSB. This particular Administrative Code chapter was not in effect at the time the hearings in the case at bar took place, although it does reflect the hearing process which was in force at the time of Shackelford's hearings. North Dakota Century Code Chapter 28–32, the Administrative Agencies Practice Act, also governs the fair–hearing process in North Dakota insofar as applicable. N.D.C.C. § 28–32–05.

With the general statutory and regulatory framework of the AFDC program in mind we now turn to the scope of review to be applied by this court. Appeals such as the present one, brought under N.D.C.C. Section 28–32–21, are to be reviewed as specified in N.D.C.C. Section 28–32–19. That section requires this court to look to the record compiled before the administrative agency itself rather than to the findings of the district court. *North Dakota Real Estate Commission v. Allen*, 271 N.W.2d 593 (N.D.1978). This court, under N.D.C.C. Section 28–32–19, is to affirm the decision of the agency unless we find that any of the following are present:

"1.   The decision or determination is not in accordance with the law.

"2.   The decision is in violation of the constitutional rights of the appellant.

"3.   Provisions of this chapter have not been complied with in the proceedings before the agency.

"4.   The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5.   The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6.   The conclusions and decision of the agency are not supported by its findings of fact."

In light of these standards we now turn to the issues raised by Shackelford.

## I

■ Shackelford's first contention is that the WCSSB is precluded from initiating any review or redetermination of a decision of the SSB regarding action by the WCSSB. She first points out that States are bound by law to afford applicants and recipients an appeal channel when decisions adverse to their eligibility status have been reached. 42 U.S.C. § 602(a)(4),[2] 45 C.F.R. § 205.-10(a)(5),[3] N.D.C.C. § 28–32–14,[4] and N.D.C.C. § 50 09 14.[5] Shackelford then argues

---

2.   42 U.S.C. § 602(a) requires that each participating State:

"... (4) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness; ..."

3.   45 C.F.R. § 205.10(a)(5) states:

"(5) An opportunity for a hearing shall be granted to any applicant who requests a hearing because his or her claim for financial assistance ... or medical assistance is denied, or is not acted upon with reasonable promptness, and to any recipient who is aggrieved by any agency action resulting in suspension, reduction, discontinuance or termination of assistance ... "

4.   N.D.C.C. § 28–32–14, *Petition for rehearing*, states:

"Any party before an administrative agency who is aggrieved by the decision thereof, within fifteen days after a copy of such decision has been mailed or delivered to such party by the administrative agency, may request a rehearing by such agency. He shall submit with the request for rehearing a statement of any further showing to be made in the proceeding, and such request and statement shall constitute a part of the record in the proceeding. The administrative agency may deny such request for rehearing or may grant the same on such terms as it may prescribe. This section, however, shall not limit the right of any agency to reopen any proceeding under any continuing jurisdiction which is granted to any such agency by any law of this state."

5.   N.D.C.C § 50–09–14, *Appeal and hearing*, states:

"An applicant for or recipient of aid to dependent children under the provisions of this chapter, aggrieved because of a county agency's decision or delay in making a decision, may appeal to the state agency in the manner prescribed by the state agency and shall be afforded a reasonable notice and opportunity for a fair hearing by the state

that the statutory and regulatory scheme on both the Federal and State levels does not envision a county social service board as being a "party" to appeals or rehearings. It is true that N.D.C.C. Sections 50-01 09(2),[6] 50-06-05.1,[7] and 50-09-03(1)[8] combine to form a functional integration of the activities of the county social service boards with those of the SSB, giving the SSB supervisory responsibilities. This integration, Shackelford argues, has the result that a county social service board is simply an extension of the SSB, and therefore any appeal brought by a county board would, in effect, be an appeal to itself. The logical result of Shackelford's proposition would be that because a county board is not a "party," but rather an extension of the Social Service Board, it is precluded from doing anything when the need for correction arises after the SSB has made a decision regarding an applicant's or recipient's appeal. However, whether or not a county social service board is a party to hearing proceedings is not in issue in the case before us. In fact, there is no need for a county social service board to occupy the status of "party" in order to initiate a reconsideration of the SSB's decision. Shackelford fails to consider the last sentence of N.D. C.C. § 28-32-14. That sentence authorizes a State agency to reopen any proceeding under any continuing jurisdiction the agency has by law. The Social Service Board has the power to reopen AFDC cases via N.D.C.C. § 50-09-14. See fn. 4. Therefore,

the letter of May 26, 1978, from WCSSB to counsel for SSB, whether characterized as a letter of inquiry, a request for reconsideration, a request for review, or a request for a rehearing, simply represented the first step in SSB's exercise (via WCSSB) of the authority found in N.D.C.C. § 50-09-14 and was proper.

## II

Shackelford's next contention is that she was denied the due-process guarantees regarding administrative agency action which derive from *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and are found in 45 C.F.R. § 205.10(a)(13). She believes that the ex parte determination of the SSB at its July 1978 meeting that there be a rehearing was a violation of her due-process rights in that she was not notified that the determination would be made nor was she given a right to be heard at the meeting regarding the determination. However, the focus of *Goldberg* was limited, as pointed out by Justice Brennan in his opinion in that case. In framing the issue, he stated:

> "The constitutional issue to be decided, therefore, is the narrow one whether the Due Process Clause requires the recipient be afforded an evidentiary hearing *before* the termination of benefits." [Emphasis in original.] *Goldberg*, 397 U.S. at 260, 90 S.Ct. at 1016, 25 L.Ed.2d at 295.

agency. The state agency, on its own motion, may review individual cases and make determinations which shall be binding upon the county agency. An applicant or recipient aggrieved by any such determination, upon request, shall be afforded reasonable notice and opportunity for a fair hearing by the state agency. All decisions of the state agency made on appeal shall be final and shall be binding upon and shall be complied with by the county agency."

6. N.D.C.C. § 50-01-09 provides, in part, that the county social service board of each county shall have the duty:

"2. To supervise and administer, under the direction and supervision of the social service board of North Dakota, such relief and welfare activities in the county as may be financed in whole or in part by or with funds

allocated or distributed by the social service board of North Dakota."

7. N.D.C.C. § 50 06 05.1 sets forth the powers and duties of the Social Service Board of North Dakota, including:

"8. To direct and supervise county social service board activities as may be financed in whole or in part by or with funds allocated or distributed by the board."

8. N.D.C.C. § 50-09-03 provides, in part, that in the administration of aid to dependent children, a county agency shall:

"1. Administer the provisions of this chapter in its county, subject to the rules and regulations prescribed by the state agency pursuant to the provisions of this chapter."

Shackelford argues that the granting of WCSSB's request to reopen the case was of greater importance than the rehearing itself. In this particular case we agree, but only because the granting of the request opened the door for the correction of an error made because of Shackelford's testimony at the original hearing. However, in *Goldberg* the Court quoted from *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961):

> "... consideration of what procedures Due Process may require under any given set of circumstances must begin with the determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."

In *Goldberg*, the governmental action under attack was the determination of welfare benefits *prior to* a fair hearing. In the present case the governmental action taken by the SSB at its July meeting set into motion the full array of recipient rights which *Goldberg* spelled out. A careful reading of *Goldberg* reveals nothing which requires that every time the SSB makes a determination regarding a case the client must be afforded a hearing. We feel no compulsion to respond to Shackelford's urging that the *Goldberg* due–process guarantees be stretched to every situation where the SSB is merely determining whether or not to institute the type of action in which the *Goldberg* due–process guarantees are to be operative.

█ The decision reached by the SSB in its July 1978 meeting to reopen the Shackelford case was a response to an internal request for review and did not require that she be afforded notice that the determination was going to be made nor that she be allowed to present evidence or cross–examine anyone at the meeting at which the determination was made. Those rights spring from that decision and were fully available to and exercised by her at the rehearing which resulted from that July 1978 decision of the SSB.

### III

Shackelford next argues that because the entire hearing and rehearing process took longer than 90 days to complete she is entitled to have the original determination made by the SSB in May 1978 reinstated. She contends that by virtue of 45 C.F.R. § 205.10(a)(16),[9] any action taken by the SSB beyond 90 days from her notice of appeal is null and void. Shackelford's notice of appeal was signed March 12, 1978. Shackelford does not contend that she did not give misleading testimony to the SSB at her original fair hearing of May 4, 1978. Rather, she argues in effect that, even though the SSB's determination that she had not been properly notified was based upon her misleading statements, the SSB should pay her March 1978 medical bills because it did not correct its erroneous decision within 90 days of her notice of appeal. For this court to accept such an argument would result in an open invitation to AFDC applicants and recipients who are denied benefits or whose benefits are terminated to lead the SSB into factual error in the hope that the error will not be discovered within 90 days of their notice of appeal.

In support of her argument Shackelford claims that 45 C.F.R. § 205.10(a)(16) is mandatory, and cites *Shands v. Tull*, 602 F.2d 1156 (3d Cir. 1979), as authority for this proposition. However, upon reading *Shands* one quickly discovers that while the Court indeed stated the proposition on which Shackelford relies, the same Court stated:.

> "The Federal regulation is mandatory. [Citations omitted.] We disagree, however, with the District Court's decision concerning what the regulation mandates. Although the District Court concluded that the regulation requires total compliance, we believe the scheme of the Social Security Act reveals a congression-

**9.** 45 C.F.R. § 205.10(a)(16) states:

"(16) Prompt, definitive, and final administrative action shall be taken within 90 days

from the date of the request for a hearing."

al intent to require only substantial compliance from the States." *Shands*, 602 F.2d at 1160.

The *Shands* Court went on to cite 42 U.S.C. § 604(a)(2) (1976) under which HEW may discontinue Federal support for a State's AFDC program when "in the administration of the plan there is a failure to comply substantially with any provision required by Section 602(a) of this Title to be included in the plan." *Shands*, 602 F.2d at 1160. The Court concluded that this provision showed "implied intent to hold the States to a standard of substantial compliance and thus to make some allowance for the difficulties of administering an extensive bureaucracy." *Shands, supra,* 602 F.2d at 1160. Thus, while relying on certain words extracted from the *Shands* opinion in her effort to persuade this court to find that 45 C.F.R. § 205.10(a)(16) is ironclad and any proceeding or action by the SSB outside its time limit regarding an appeal is without effect, she neglects the actual holding of that case. Instead, she moves from the statement in *Shands* to the holding in *Stephenson v. Creasy* (S.D.Ohio 1980).

In *Stephenson*, the Court was asked to review the reconsideration procedure employed by the Ohio Department of Public Welfare (O.D.P.W.) when a county welfare board questioned the decision of the State office regarding an AFDC applicant's or recipient's appeal. The plaintiff class alleged that the reconsideration process, in several ways, was violative of their due process rights. As one of their challenges the plaintiff class contended that any reconsideration extending beyond the maximum time period set out in the regulations was precluded by those time limits. The Court held that O.D.P.W. must complete its decision-making with or without the reconsideration procedure at issue within the time period prescribed by the applicable Federal regulations. Several distinctions exist between *Stephenson* and the case at bar: First, that case was a class action brought by numerous plaintiffs and based upon numerous alleged violations of the time limits. Second, the plaintiff class in *Stephenson* was seeking declaratory and injunctive relief prohibiting the defendants from continuing their reconsideration procedure to the extent it violated the time limits. In the present case, Shackelford seeks reinstatement of the erroneous SSB decision of May 1978 and ultimately entitlement to benefits which her counsel conceded at oral argument she is not otherwise entitled to. Third, the procedure under attack in *Stephenson* was an established practice. The reconsiderations based on requests by the county welfare boards in Ohio were so commonplace that the steps for this practice were set out in the Ohio Public Assistance Manual. Statistics regarding these types of reconsiderations reveal that during 1977, of the 80 reconsideration decisions that were issued relative to the three types of public assistance programs (including AFDC) subject to the procedure, five were issued over 180 days after the county welfare department requested the reconsideration, 23 were issued between 121 and 180 days after the requests, 24 were issued between 91 and 120 days after the requests, and 28 were issued between 31 and 90 days after the requests. In the present case, we examine not an ongoing process that consistently went far beyond the time limits but rather one incident. It should also be pointed out that while the SSB should not be lightly excused for failing to consider WCSSB's request at the monthly meeting immediately following the request, much of the delay in the entire process under examination here is attributable to the requests and later unavailability of Shackelford. Last, but certainly not without significance, is the fact that the plaintiff class of *Stephenson* sought to utilize 45 C.F.R. 205.10(a)(16) not as a sword to strike down a single and necessary corrective measure taken by the State agency as is the case here, but rather as a shield to protect the due-process guarantees threatened by the continuation of established practices of the State agency. We agree with the Court in *Shands v. Tull, supra,* and read the overall scheme of the Social Security Act, in which the AFDC program is found, to require substantial compliance with its attendant regulations by the

States. Furthermore, the facts in this case give rise to the application of the equitable maxim found at N.D.C.C. § 31–11–05(8):

"No one can take advantage of his own wrong."

The synopsis of the testimony by the appeals referee following the original appeal hearing in this case contains the following statement:

"The appellant and her mother testified that during March, 1978, the Form 600, Notice of Decision, was received by the appellant's mother and by her given to the appellant, but that the Advance Notice was never received by the appellant or her mother or anyone on the appellant's behalf."

Then, on October 16, 1978, at the rehearing which resulted from WCSSB's urging, Shackelford, when asked about the advance notice and whether or not she had received it and if so when, testified:

"It was two days before I was going to be dropped. I remember that for a fact."

It is inconceivable that the Congress intended that an otherwise ineligible person receive financial benefits through the AFDC program after giving misleading information in an appeal hearing when the mistake is discovered and corrected within a time period which is, although outside a specified duration, reasonable.

■ In reviewing the decision made by SSB following the rehearing of October 16, 1978, we find none of the elements enumerated in N.D.C.C. Section 28–32–19, our statutory standard of review. In the absence of those elements, the decision of the SSB must stand.

The results of this appeal may seem harsh, in that Shackelford's need for medical services beyond March 1, 1978, was directly related to her original eligibility. However, because Shackelford's counsel conceded during oral argument that unless we find in favor of her on the issues before us she is not otherwise eligible for AFDC benefits, we are left with no other choice than to affirm the action taken by the SSB without remanding the case for a determination regarding Shackelford's original rea-sons for appealing her termination of AFDC benefits.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.